**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                           No. 96-4916

LARRY R. LINNEY,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Charles E. Simons, Jr., Senior District Judge, sitting by designation.
(MISC-95-34)

Argued: December 4, 1997

Decided: January 20, 1998

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed as modified by published opinion. Judge Motz wrote the
opinion, in which Judge Murnaghan and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Milton Gordon Widenhouse, Jr., Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant. Robert James Con-
rad, Jr., Assistant United States Attorney, Charlotte, North Carolina,
for Appellee. **ON BRIEF:** William Arthur Webb, Federal Public
Defender, Raleigh, North Carolina, for Appellant. Mark T. Calloway,
United States Attorney, Charlotte, North Carolina, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Larry R. Linney appeals his conviction for criminal contempt in violation of 18 U.S.C.A. §§ 401(1) and 401(3) (West 1966) and his sentence -- a fine of $4,950 or, in the alternative, 300 hours of community service. Linney challenges the sufficiency of the evidence and the adequacy of the notice of the contempt charge. He also maintains that the district court erred in denying his request for a jury trial and in imposing his sentence. We affirm in all respects, except to correct Linney's sentence to bring it in compliance with the law.

I.

In May 1994, Larry R. Linney was appointed counsel for Stevie Twitty, who had been charged with conspiracy to possess with intent to distribute cocaine and cocaine base. Six months later, Linney was elected to the North Carolina General Assembly.

The district court informed Linney on April 7, 1995, that Twitty's case would be called for trial during the term of court beginning May 1, 1995. Although Linney had represented Twitty for a year prior to the scheduled trial date, he had devoted little effort to Twitty's case. For example, Linney had not attempted to conduct any discovery until shortly before the trial date and had filed only a single motion on Twitty's behalf.

The district court set jury selection in Twitty's case for the morning of Monday, May 8, 1995, and mailed Linney a notice so stating. On the Friday morning before that Monday, Linney moved for a continuance and for leave to withdraw from representation of Twitty. Through his law clerk, the district judge informed Linney that both motions would be denied, but that Linney could present any objections to their denial at jury selection on May 8.

At 10:00 a.m. on May 8, the district court called Twitty's case for jury selection. Linney told the court that he was not prepared for trial and then, for the first time, asserted additional arguments as to why

2

the court should grant his motion to withdraw. For example, Linney maintained that his duties as a member of the North Carolina legislature demanded his attention. He also claimed a conflict of interest prevented him from representing Twitty, noting that budget decisions he made as a state legislator affected the State Bureau of Investigation and agents from the Bureau could be called as witnesses in the Twitty case. Linney additionally contended that he had lost faith in the criminal justice system because of the local district attorney's investigation of him on what he deemed "trumped up" charges. The district court denied Linney's motions, informing Linney: "I expect you to be present to participate in the selection of Jury [sic] in the [Twitty] case."

The court then ordered a ten-minute recess. Jury selection in the Twitty case was scheduled to take place at approximately noon, after the jury had been chosen for another case. During the recess, Linney left the courtroom. As he did so, a United States Deputy Marshal heard him say, "You (or Y'all) will have to come and get me." The marshal subsequently reported this to the district judge.

As scheduled, the court called the Twitty case for jury selection at noon. Because Linney was not present, the court continued the case until 2:00 p.m. The court's deputy clerk left a voice mail message instructing Linney to appear at 2:00 p.m. When the court reconvened at 2:00 p.m. and Linney was still absent, the district court issued a warrant for Linney's arrest.

Meanwhile, Linney had taken a flight from Asheville to Raleigh. When he deplaned, police arrested Linney and detained him overnight in jail. The following day Linney returned to Asheville to appear with counsel before the district court.

In a summary contempt hearing, pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, the court considered arguments made by Linney and his attorney and asked Linney questions about his representation of Twitty. The district court found Linney in criminal contempt, ordered him to reimburse the government for costs and expenses due to the delay of the Twitty case, determined that Linney should not be compensated for his representation of Twitty, and disbarred Linney from practice before the United States District Court for the Western District of North Carolina.

3

Linney successfully appealed the district court's summary contempt order. On appeal, we held that Linney did not commit any acts of contempt within the presence of the court -- a prerequisite to a Rule 42(a) summary finding of contempt. Accordingly, we vacated the contempt order and remanded for a hearing conducted pursuant to Rule 42(b). United States v. Linney, No. 95-5411, 1996 WL 379781 (4th Cir. July 1, 1996) (unpublished); see Fed. R. Crim. P. 42(b).

On remand, another district judge, the Honorable Charles E. Simons, Jr., Senior United States District Judge for the District of South Carolina, was designated to preside over the Rule 42(b) contempt proceedings. Immediately before the contempt hearing, Linney requested a jury trial. Judge Simons denied this request stating that if he found Linney in contempt he would not impose a penalty of imprisonment and, therefore, a jury trial was not constitutionally required. Linney then objected to the sufficiency of the contempt notice; the judge rejected this argument, finding that the notice "fully complied" with Rule 42(b).

After considering the evidence, including the testimony of Linney and six other witnesses, Judge Simons found Linney guilty of criminal contempt. The judge then conducted a sentencing hearing and imposed a fine of $4,950, or, in the alternative, if this proved to be "uncollectible," ordered Linney to perform 300 hours of community service. Judge Simons also directed that Linney receive no compensation in connection with the representation of Twitty.

II.

Initially, Linney maintains that the Government presented insufficient evidence to support his conviction of criminal contempt.

On May 8, 1995, in response to Linney's motion for a continuance and for withdrawal from representation of Twitty, the district court told Linney:

> [Y]ou have an obligation, in my opinion as presiding Judge, to represent your client to the best of your ability. . . .

4

> That's what I'm directing you to do. And I will expect you
> to be present. The motions as you've stated them are denied.
> I expect you to be present to participate in the selection of
> Jury [sic] in the trial of the case in the representation of your
> client, Stevie Twitty.
>
> [L]et's take about ten minutes so we won't have to break
> again when we get the jury in here.

Immediately after receiving these instructions, Linney left the courtroom and took a flight to Raleigh.

Judge Simons found that the Government produced sufficient evidence to prove that Linney's "conduct . . . constitute[d] criminal contempt under 18 U.S.C. sections 401(1) and 401(3)." To support a conviction of criminal contempt for violation of a court order, the Government must prove beyond a reasonable doubt that the defendant willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it. See Richmond Black Police Officers Ass'n v. City of Richmond, 548 F.2d 123, 129 (4th Cir. 1977). Linney maintains that the district court's "statement of its expectations regarding him" was "not a definite, clear, and specific order." Brief of Appellant at 17. Linney contends that after hearing the above instructions he believed that jury selection for the Twitty case would begin the next day and so in leaving Asheville he did not willfully violate any court order. Cf. United States v. Marx, 553 F.2d 874, 876 (4th Cir. 1978) (holding that a lawyer's willful absence from his client's trial is contemptuous). He claims that he flew to Raleigh with the intention of returning for court proceedings the following day, May 9. Like Judge Simons, we find this argument unpersuasive.

The district court's order -- "to be present to participate in the selection of Jury" -- like the order we recently considered in United States v. McMahon, 104 F.3d 638, 643 (4th Cir. 1997), and unlike that in many contempt cases, is "stunningly simple." Moreover, like the district judge in McMahon, Judge Simons made numerous well-reasoned factual findings supporting his judgment of contempt. Judge Simons noted that a deputy marshal testified that he heard Linney state as he left the courtroom on May 8, "You (or Y'all) will have to come and get me." The judge found that "all other counsel in the case

5

understood the time at which they were to appear, and they did so" and that Linney received a notice from the clerk's office specifying that "jury selection and trial would begin on May 8, 1995." The judge pointed out that the prosecutor in the Twitty case "noted on the record" on May 8 (while Linney was present in the courtroom) that he would have enough evidence "for that day." (Emphasis added). Additionally, Judge Simons noted that "the evidence of Linney's subsequent petulant behavior demonstrates the court's directive was understood by Linney, who knowingly chose to defy it." Finally, the judge specifically found that "in the overall context of the situation," the directive of the presiding judge in the Twitty case to Linney, i.e., "to represent his client in the selection of the jury," was "unambiguous."

The record provides abundant support for Judge Simon's findings and his ultimate conclusion that Linney's conduct constituted criminal contempt.

III.

Linney next contends that the Government provided him inadequate notice of the contempt charges.

Rule 42(b) of the Federal Rules of Criminal Procedure prescribes the notice that must be given to the party charged with criminal contempt when the assertedly contemptuous conduct has occurred outside the presence of the court. That rule provides in pertinent part:

> A criminal contempt . . . shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.

Fed. R. Crim. P. 42(b) (emphasis added).

The notice in this case states that Linney "committed contempt of said Court by leaving the courtroom after having been ordered by the [district court] to remain and represent his client, Stevie Twitty." The

6

notice further states that Linney "failed to appear on May 8, 1995 and represent his client . . . as ordered by said Court."

Linney maintains that because he left during a recess, he did not leave the courtroom after being ordered to remain. In addition, Linney notes that he appeared in court and represented Twitty on May 8, when he moved, on Twitty's behalf, for a continuance and withdrawal. Thus, Linney contends that when the Government attempted to prove criminal contempt it relied on facts "far different from those stated in its notice" and, therefore, the notice was deficient. Brief of Appellant at 21.

We disagree. The notice required by Rule 42(b) is not an indictment or information. See United States v. Weeks , 570 F.2d 244, 246 (8th Cir. 1978); United States v. Robinson, 449 F.2d 925, 930 (9th Cir. 1971). Rather, a Rule 42(b) notice must simply satisfy due process requirements by "contain[ing] enough to inform [the alleged contemnor] of the nature and particulars of the contempt charged." Robinson, 449 F.2d at 930; see United States v. Martinez, 686 F.2d 334, 344 (5th Cir. 1982). In this case, the notice provided Linney with essential facts sufficient to establish the basis for the criminal contempt charges; it clearly charged Linney with contempt for leaving town after the district court ordered him to represent Twitty.*

_____

*We note that included in the midst of his argument as to the inadequacy of the Government's notice, Linney asserts that his "appointed counsel had merely three hours to prepare the defense once the parties' waived an apparent conflict of interest and the district court denied counsel's motion to withdraw." Brief of Appellant at 23. This argument appears to have little to do with Linney's claim that the notice itself was inadequate. In any event, whatever validity such an argument might have in another case, it has none here. The same law firm represented Linney at the initial summary contempt hearing in May 1995 and in Linney's earlier appeal and so was well informed as to the facts of this case. Moreover, in our earlier opinion, we recited the basic facts of the case. Thus, Linney and his counsel clearly had considerable advance notice of the particulars of the charges against Linney. Counsel should have been prepared to represent Linney in the event that the court denied his motion to withdraw, as it ultimately did.

7

Finally, contrary to Linney's suggestion, this case is easily distinguishable from Richmond Black Police Officers Ass'n, 548 F.2d at 123. There we found the contempt notice to be insufficient because the Government had provided the defendants with no notice that they were being charged with contempt. Id. at 127 n.2.

IV.

Linney maintains that the district court denied him his Sixth Amendment right to a jury trial. He argues that the district court "could not deprive [him] of his constitutional right to a jury trial by promising to impose a fine of no more than $5,000.00." Linney also asserts that the court actually imposed a fine exceeding $5,000, which he maintains entitled him to a jury trial. We consider each contention in turn, reviewing de novo the determination that a jury trial is not constitutionally required. See United States v. Coppins, 953 F.2d 86 (4th Cir. 1991).

A.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury." U.S. Const. amend. VI. Notwithstanding the absolute nature of these words, the Supreme Court has held that jury trials are required only for "serious" crimes; "petty" offenses can be tried by a judge. See Duncan v. Louisiana, 391 U.S. 145, 159-62 (1968).

To determine if an offense is serious, a court must look to objective criteria, particularly "the severity of the maximum authorized penalty." Baldwin v. New York, 399 U.S. 66, 68 (1970) (plurality opinion). Where Congress has indicated the seriousness of a crime by setting a maximum penalty for it of more than six months imprisonment, a defendant is entitled to a jury trial. See Blanton v. City of North Las Vegas, 489 U.S. 538, 541 (1989) (holding that courts must look to "objective indications of the seriousness with which society regards the offense").

However, "criminal contempt is unique in that legislative bodies frequently authorize punishment without stating the extent of the pen-

8

alty which can be imposed." Duncan, 391 U.S. at 162 n.35. Thus, "where no legislative penalty is specified and sentence is left to the discretion of the judge, as is often true in the case of criminal contempt, the penalties or seriousness of the contempt will be judged by the penalty actually imposed." Codispoti v. Pennsylvania, 418 U.S. 506, 511 (1974) (citing Bloom v. Illinois, 391 U.S. 194, 211 (1968)); see also Frank v. United States, 395 U.S. 147, 149 (1968) (in prosecutions for criminal contempt "the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense"); United States v. Hawkins, 76 F.3d 545, 550 (4th Cir. 1996) (same).

Accordingly, "for `serious' criminal contempts involving imprisonment of more than six months," a contemnor is entitled to a jury trial. See International, United Mineworkers of America v. Bagwell, ___ U.S. ___, 114 S. Ct. 2552, 2557 (1994) (quoting Bloom, 391 U.S. at 199). But less serious criminal contempt, involving imprisonment for no more than six months, carries no entitlement to a jury trial. See Muniz v. Hoffman, 422 U.S. 454, 475-76 (1975).

Linney does not dispute any of the above principles. Nor does he maintain that a fine of $5,000 or less entitles him to a jury trial. See Brief of Appellant at 26 ("If the actual sentence imposed does not exceed six months or a $5,000.00 fine, then a criminal defendant is not entitled to a jury trial for criminal contempt.") (emphasis added); cf. 18 U.S.C.A. §§ 19, 3571(b)(7) (West Supp. 1997) ("petty" offense defined as an offense for which a fine of "not more than $5,000" can be imposed).

Nevertheless, Linney claims that Judge Simons erred because, according to Linney, "[a] district court cannot deprive a defendant of his constitutional right to a jury trial by making a pretrial indication that it would impose a sentence under six months imprisonment or a $5,000.00 fine." Brief of Appellant at 28. In support of this statement, Linney cites only dicta in United States v. Lewis, 65 F.3d 252, 255 (2d Cir. 1995), aff'd on other grounds, ___ U.S. ___, 116 S. Ct. 2163 (1996). However, Lewis involved not a charge of criminal contempt but statutory "petty" offenses, i.e., those for which the legislature has established a maximum penalty of six months. Lewis is of little relevance in the criminal contempt context where a court has the pretrial

9

discretion to determine that a charge of contempt does not constitute a "serious" offense so as not to require a jury trial. See Codispoti, 418 U.S. at 512.

Indeed, whether a court makes an express pretrial announcement indicating the limits on the penalty it will impose, every time it denies a defendant's request for a jury in a criminal contempt case, the court, simply by denying the request, effectively indicates pretrial that it will not impose a sentence greater than that permitted for a "petty" offense. Therefore, courts obviously can make such pretrial announcements, see, e.g., United States v. Martinez, 686 F.2d 334, 340 (5th Cir. 1982); and we have never discouraged the practice. See Richmond Black Police Officers Ass'n, 548 F.2d at 128 ("absent some indication" by the court that if convicted the sentence would make it a "petty" offense, a party charged with criminal contempt is entitled the opportunity to at least request trial by jury). Only if the court later imposes a penalty characteristic of a "serious" offense will the defendant's constitutional rights be violated.

Thus, Judge Simons did not err in announcing prior to trial that he would not treat Linney's contempt as a "serious" offense. The ultimate determination as to whether a defendant charged with criminal contempt is entitled to a jury trial depends on the actual penalty imposed. Accordingly, unless the judge imposed on Linney a sentence indicative of a "serious" offense, he did not err in denying Linney a jury trial.

B.

Linney contends that the fine of $4,950, combined with the district court's determination that he receive no compensation in connection with his defense of Twitty, resulted in a total fine of more than $5,000. Given that the combination of these penalties assertedly created a fine of over $5,000, Linney maintains that the criminal contempt was, therefore, "serious" and so entitled him to trial by jury. See Codispoti, 418 U.S. at 512. Because the district court lacked jurisdiction to deny Linney compensation for the representation of Twitty, making that portion of its order unenforceable, this argument necessarily fails.

10

The Criminal Justice Act of 1964, 18 U.S.C.A. § 3006A (West 1985 & Supp. 1997) (CJA), authorizes appointment of, and compensation for, counsel to represent indigent defendants charged with federal offenses. The determination of the amount of compensation to be awarded to a CJA-appointed attorney "rests entirely with the discretion of the district court." United States v. Stone, 53 F.3d 141, 143 (6th Cir. 1995). Section 3006A(d) provides that"[a] separate claim for compensation and reimbursement shall be made to the district court for representation before the United States magistrate and the court, and to each appellate court before which the attorney provided representation to the person involved." The statute, therefore, provides the court in which the representation of the indigent defendant occurred the authority to "fix the compensation and reimbursement to be paid." Id.

In this case, to punish Linney's contempt, the district judge fined him $4,950 and purportedly denied him any CJA compensation in connection with his representation of Twitty. However, the judge who imposed this penalty did not preside over the case in which Linney represented Twitty under the CJA. Thus, because the CJA statute gives the discretion for compensation and reimbursement of CJA appointed attorneys to the court presiding over the underlying criminal case for which the CJA compensation may be awarded, the judge who sentenced Linney for contempt lacked jurisdiction to make the CJA compensation determination. Accordingly, the only enforceable portion of Linney's fine is $4,950 -- an amount that he concedes is not large enough to trigger constitutional entitlement to a jury trial.

V.

Finally, Linney contests his sentence on two grounds.

A.

Linney argues that the district court erred in imposing a fine without making factual findings regarding his ability to pay. We review de novo the adequacy of factual findings to support a fine and accept the district court's findings unless they are clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

11

Congress has directed that a court must consider specific factors applicable to an individual defendant in determining whether to impose a fine and in fixing the amount of the fine. See 18 U.S.C.A. § 3572(a) (West Supp. 1997). We, in turn, have held that a court must make factual findings regarding the defendant's ability to pay. See United States v. Walker, 39 F.3d 489, 492 (4th Cir. 1994) ("This court has made it clear that the district court must make factual findings . . . so that there can be a basis from which to review whether the district court abused its discretion in assessing a fine.").

After considering the evidence and arguments at the contempt hearing and finding Linney guilty of criminal contempt, Judge Simons held a sentencing hearing at which he considered extensive argument from counsel. During the hearing, with respect to Linney's ability to pay a fine, the judge noted that "he's a very intelligent person and has unusually high training and background." In addition, the court remarked that Linney is "[a] college graduate . . . it is surely obvious to me that in the future he should be able to earn a considerable amount of salary." Moreover, Judge Simons recognized that Linney might be disbarred and so unable to practice law, but concluded that Linney would still have the ability to earn funds sufficient to pay the fine; the judge found that Linney had "a definite high earning capacity aside from the practice of law if he is not permitted to practice law."

We and other courts have held similar, but somewhat more detailed, findings sufficient to uphold a district court's imposition of larger fines. See, e.g., United States v. Gresham, 964 F.2d 1426, 1431 (4th Cir. 1992); United States v. Blackman, 950 F.2d 420, 425 (7th Cir. 1991); cf. Walker, 39 F.3d at 492 (reversing the imposition of a fine where no findings were made with respect to the defendant's ability to pay). The district court's findings as to Linney's ability to pay a $4,950 fine were not copious, but considering the relatively small amount of the fine and undisputed evidence as to his educational background (undergraduate degree from Duke and a law degree from the University of North Carolina) they were adequate.

B.

Linney also contends that the district court imposed an illegal alternative sentence by directing that he perform 300 hours of community

12

service if in the future he was found financially unable to pay the fine. Linney argues that this alternative sentence violates 18 U.S.C.A. § 3572(e) (West Supp. 1997). We review de novo this issue of statutory construction. United States v. Payne, 952 F.2d 827, 828 (4th Cir. 1991).

We agree that the court erred in imposing community service as an alternative sentence at the same time it sentenced Linney to pay the fine. Section 3572(e) provides that "[a]t the time a defendant is sentenced to pay a fine, the court may not impose an alternative sentence to be carried out if the fine is not paid." Linney's alternative sentence violates the plain language of this statute.

However, we do not have to vacate Linney's sentence to remedy this error. Rather than remand for resentencing, we can modify the sentence to comply with § 3572(e). In so doing, we follow Taylor v. Hayes, 418 U.S. 488, 496 (1974), where the Supreme Court held that it was not improper for an appellate court to correct a criminal contempt sentence to comply with the law. The Court found this to be an acceptable alternative to remand. Id.; see also Hawkins, 76 F.3d at 550 (an appellate court has the authority to correct trial court errors in contempt cases by modifying the sentence in an"appropriate case" but not when the Government failed to prove elements of contempt).

If in the future it is proved that Linney is unable to pay the fine, the district court, if requested, may impose another sanction in lieu of all or part of the fine. See 18 U.S.C.A.§ 3573 (West Supp. 1997) (permitting the court to modify or remit a fine or assessment upon a showing that efforts to collect are not likely to be effective).

We modify the sentence imposed to eliminate the alternative sentence of 300 hours of community service, but affirm in all other respects.

AFFIRMED AS MODIFIED

13