# CIRCUIT COURT OF THE CITY OF SUFFOLK

Commonwealth of Virginia

v.

Michael Angelo Foulks

Case Nos. CR00F00783 and CF00M00216

BY JUDGE D. ARTHUR KELSEY

September 24, 2001

This matter came before the Court for trial on September 21, 2001. When the Court called the case from the docket, the defendant and the Commonwealth's Attorney appeared for trial. The defendant's counsel, William P. Robinson, Jr., did not appear. For the following reasons, the Court believes the circumstances require Robinson to show good cause why he should not be held in contempt of court for his failure to appear.

This case has a tortured procedural history. In July 2000, the Commonwealth charged the defendant with obstruction of justice and possession of cocaine (over ninety grams) with the intent to distribute. After the defendant executed a sworn statement claiming to be unemployed and to own no assets of any value whatsoever, the Court appointed the Suffolk Public

Defender's Office to represent him. The Court also afforded the defendant a prompt arraignment hearing on July 24, 2000. On July 24, after being advised that the defendant intended to retain private counsel, the Court continued the arraignment at the defendant's request to August 10.

On August 4, the Court granted leave to the defendant to substitute William P. Robinson, Jr., as counsel in place of the Suffolk Public Defender. At Robinson's request, the Court continued the arraignment to August 17. At the arraignment on August 17, with Robinson's concurrence, the Court set the trial on November 17. Three days before the November 17 trial, invoking his legislative privileges under Va. Code Ann. § 30-5 (Michie 2001), Robinson requested that the trial be continued. The Court postponed the trial to March 9, 2001, on the assumption that such a long extension would ensure the case would not again be jeopardized by a conflict with Robinson's legislative duties.

On March 9, Robinson failed to appear for trial because of a hearing scheduled in another court. The trial was then continued to May 4 at Robinson's request. On May 2, Robinson telefaxed a letter to the Clerk of Court requesting another continuance of the trial (pursuant to Va. Code Ann. § 30-5) to one of four dates: May 23, June 25, July 23, or July 30. The Court continued the matter to June 25 for trial. Four days before the June 25 trial, Robinson again invoked Va. Code Ann. § 30-5 and requested another continuance. The Court set the case for trial on August 8, 2001. At this point, more than one year had passed — due to Robinson's five continuance motions — since the Grand Jury's indictment of the defendant for possession of cocaine with intent to distribute.[1]

On August 8, 2001, after unsuccessfully seeking to suppress evidence incriminating the defendant, Robinson requested and received another continuance of the trial. Though the Commonwealth was "ready to go forward to trial," Robinson claimed to need time to "advise his client of some issues" in light of the Court's ruling. Transcript of Proceeding at 2 (Aug. 8, 2001). With Robinson's commitment that he and his client would be available at 2:00 p.m. on September 21, the Court continued the trial to that date and time on the defendant's motion. *See* Order of August 8, 2001 (Delk, J.). Even so, the presiding judge expressed to Robinson "the Court's concern about the age of this case." Transcript of Proceeding at 2 (Aug. 8, 2001) (Delk, J.).

---

[1] Trial courts in Virginia strive to bring the great majority of criminal cases to trial within 120 days of arrest. *See* Statement of the Judicial Council of Virginia on the Adoption and Implementation of Case Processing Time Guidelines (July 1, 1991). While a difficult, but vitally important, goal to reach, it is an impossible goal in cases where criminal defense counsel employ every available stratagem of delay.

In a completely different matter, Robinson represented Gwen Hardison in the Richmond Division of the U.S. District Court for the Eastern District of Virginia. *See United States v. Hardison,* Crim. No. 3:01CR00112-04 (E.D. Va. 2001). Having already pleaded guilty to bank robbery, Hardison was scheduled to be sentenced by U.S. District Judge Robert E. Payne on September 17, a hearing of a type that might last an hour at most. Four days before the September 17 sentencing hearing, Robinson initiated a telephone conference call between himself, the federal prosecutor, and Judge Payne. During this conference, Robinson stated that he had a scheduling conflict with the September 17 sentencing hearing (because of legislative duties) and asked that the hearing be continued.

As the transcript of the telephone call with Judge Payne discloses, Robinson commented that he would "change some other things" in order to be available on September 21. Transcript of Hearing at 9 (Sept. 13, 2001). Judge Payne offered to schedule the sentencing for the afternoon of September 20, but Robinson declined. *Id.* at 12. At no time did Robinson alert Judge Payne to the fact that these "other things" involved a state court trial. Nor, for that matter, did Judge Payne know the state court proceedings had been delayed for over a year due to an unremitting campaign of continuances by Robinson.

On September 18, Robinson sent a telefax to the Suffolk Clerk of Court stating: "Due to a *Federal Trial* which is scheduled in Richmond, I must respectfully request a continuance. . . ." Robinson Telefax to Murden (Sept. 18, 2001) (emphasis added). Robinson, however, never consulted with the Court or made any effort to determine if the Court would grant his motion. At no time prior to calling the case for trial on September 21 did the Court grant any continuance or give Robinson any reason to believe he did not have to appear for trial. On September 21, the day of trial for Michael Angelo Foulks, Robinson's client appeared; Robinson did not.

Under Va. Code Ann. § 18.2-456(1) (Michie 1996), the Court has the power to issue summary contempt sanctions against any officer of the court guilty of misbehavior in close enough proximity "as to obstruct or interrupt the administration of justice." *See also* Va. Code Ann. § 18.2-457 (summary contempt sanctions include up to ten days in jail and fine of $250.00). As the Virginia Court of Appeals has explained:

"Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." 4A Michie's Jurisprudence, *Contempt,* § 2 (Repl. Vol. 1983). Any act which is calculated to

embarrass, hinder, or obstruct the court in the administration of justice is contempt.

*Brown v. Commonwealth*, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998) (citing *Potts v. Commonwealth*, 184 Va. 855, 859, 36 S.E.2d 529, 530 (1946), and *Carter v. Commonwealth*, 2 Va. App. 392, 396, 345 S.E.2d 5, 7-8 (1986)).

Under Virginia law, an attorney's "actions in scheduling multiple matters for trial in different courts in different jurisdictions at the same time" may support the conclusion that such conduct constitutes "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." *Brown*, 26 Va. App. at 762, 497 S.E.2d at 149 (citing *Murphy v. Maryland*, 416 A.2d 748, 756, n. 11 (Md. Ct. Spec. App. 1980)). A failure to appear also violates a court's order setting the trial date and implicitly commanding counsel to appear on that date. *See* Va. Code Ann. § 18.2-456(5) (forbidding "[d]isobedience or resistance of an officer of the court . . . to any lawful process, judgment, decree, or order of the court.").

In short, "a lawyer's willful absence from his client's trial, without a legitimate reason, is contemptuous." *United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977); *see also United States v. Linney*, 134 F.3d 274, 277 (4th Cir. 1998) (lawyer-legislator found in contempt for failure to attend trial claiming, among other things, that legislative duties "demanded his attention"); *In re Thomson*, 12 Va. Cir. 27, 1986 WL 401747 (Winchester 1986) (Whiting, J.); 4A Michie's Jurisprudence, *Contempt*, § 14, at 266 (1999) (an attorney's unexcused "willful absence from his client's trial" constitutes contempt of court).

Here, probable cause exists to believe that (i) Robinson rescheduled a federal court sentencing hearing *knowing* that it would conflict with his obligation to appear in this Court for the trial of Michael Angelo Foulks; (ii) Robinson did not appear for the trial or receive any continuance by the Court excusing his absence; (iii) Robinson's letter to the Suffolk Clerk of Court, no doubt intended to be passed on to this Court, did not disclose that the "Federal Trial" was not a trial at all, but a mere sentencing hearing; and (iv) Robinson's letter failed to disclose that his federal court sentencing hearing had only days before been rescheduled for September 21.

At the very least, these facts suggest that Robinson's actions in "scheduling multiple matters for trial in different courts in different jurisdictions at the same time" fall within that category of misbehavior which tends to obstruct or interrupt the administration of justice within the meaning of Va. Code Ann. § 18.2-456(1). *Brown*, 26 Va. App. at 762, 497 S.E.2d at

149; *see also* Va. Code Ann. § 18.2-456(5). To be sure, Robinson's actions appear even less pardonable than those of the attorney found in contempt of court in *Brown*, who claimed he "wasn't aware" of the hearing because he failed to make the proper notation in his personal "docket book." *Brown*, 26 Va. App. at 761, 497 S.E.2d at 149.

The multiple continuances requested by Robinson for his legislative activities, though not the subject of this contempt show cause, warrant some comment given their considerable impact on the delay in bringing this case to trial. Virginia Code Ann. § 30-5 stems from "long-standing common law and constitutional doctrines of legislative immunity that ensure that no legislator can be summoned into court as a means of taking him or her away from his or her legislative responsibilities." Guidelines on Legislative Continuances, House of Delegates Committee on Rules (April 21, 1998) (forwarded to the Suffolk Circuit Court on May 16, 2001, by Delegate Johnny S. Joannou along with the advice that "it might be helpful for the courts that are within my legislative district to be aware of the guidelines that have been set by the House of Delegates.").

As the House Committee on Rules has emphasized, however, "it is important to recognize that the Code does not grant the right to a continuance to the member of the legislature but rather grants this right to the party that has chosen to retain a member of the legislature as his or her attorney." *Id.* Implicit in § 30-5 is the good-faith duty of a legislator lawyer not to accept representation "where it is clear that a party may be seeking out a legislator to act as a lawyer simply to have the opportunity to take advantage of the legislative continuance for purposes of delay." *Id.*

In cases where, as here, a Grand Jury has found probable cause to believe that the defendant has possessed a large amount of cocaine with intent to distribute it, the public has as much interest as the defendant himself in a speedy trial. The lofty purposes behind § 30-5, as historically sound and jurisprudentially valid as they may be, are not furthered by defendants who deliberately seek out legislator-lawyers as a means of tapping their near-automatic delay powers.

Robinson cannot possibly be caught unaware by these concerns. For over a decade, he has been the subject of scrutiny for his unrestrained use of his legislative continuance privilege. *See generally* Steve Stone, "'I Accept Responsibility' — In Letter, Lawyer Laments Mistakes in Use of Legislative Privilege and Apologizes," *The Virginian-Pilot*, Dec. 28, 1997, at A1 (Robinson publicly accepted "responsibility" for his actions, acknowledged his "error in judgment," and stated his "intention to be far more judicious in

[his] use of the privilege."). The facts of this case stand in stark contrast to Robinson's public *mea culpa.*

The Court orders William P. Robinson, Jr., to appear before this Court on October 5, 2001, at 4:00 p.m. to show cause why his conduct should not be deemed contemptuous and punished accordingly. The Court directs the Clerk of Court to issue a show cause summons, with a copy of this Opinion and Order attached, for personal service on Robinson. *See* Va. Code Ann. § 19.2-11 (Michie 2000). It is so ordered.

October 19, 2001

On September 21, 2001, when the Court called this case from the docket, the defendant and the Commonwealth's Attorney appeared for trial. The defendant's counsel, William P. Robinson, Jr., did not appear. The Court issued an order requiring Robinson to show cause why he should not be held in contempt of court for his failure to appear. After making several misleading statements (both before and after the aborted trial) attempting to explain his absence, Robinson entered a *nolo contendere* plea upon which the Court entered a finding of guilty as charged. For the following reasons, the Court sentences Robinson to ten days in jail with five days suspended on specific terms for a period of five years.

As noted in this Court's earlier show cause order, *see Commonwealth v. Foulks* (Sept. 24, 2001), [*supra*], this case has an unseemly procedural history. In July 2000, the Commonwealth charged the defendant with obstruction of justice and possession of cocaine (over ninety grams) with the intent to distribute. After the defendant executed a sworn statement claiming to be unemployed and to own no assets of any value whatsoever, the Court appointed the Suffolk Public Defender's Office to represent him. The Court also afforded the defendant a prompt arraignment hearing on July 24, 2000. On July 24, after being advised that the defendant intended to retain private counsel, the Court continued the arraignment at the defendant's request to August 10.

On August 4, 2000, the Court granted leave to the defendant to substitute Robinson as counsel in place of the Suffolk Public Defender. At Robinson's request, the Court continued the arraignment to August 17. At the arraignment on August 17, with Robinson's concurrence, the Court set the trial on November 17, 2000. Three days before the November 17 trial, invoking his legislative privileges under Va. Code Ann. § 30-5 (Michie 2001), Robinson requested that the trial be continued. The Court postponed the trial to March 9, 2001, on the assumption that such a long extension would ensure the case

would not again be jeopardized by a conflict with Robinson's legislative duties.

On March 9, Robinson failed to appear for trial because of a hearing scheduled in another court. The trial was then continued to May 4 at Robinson's request. On May 2, Robinson telefaxed a letter to the Clerk of Court requesting another continuance of the trial (pursuant to Va. Code Ann. § 30-5) to one of four dates: May 23, June 25, July 23, or July 30, 2001. The Court continued the matter to June 25 for trial. Four days before the June 25 trial, Robinson again invoked Va. Code Ann. § 30-5 and requested another continuance. The Court set the case for trial on August 8, 2001. At this point, more than one year had passed due to Robinson's five continuance motions since the Grand Jury's indictment of the defendant for possession of cocaine with intent to distribute.

As the Court noted in its show-cause order, the multiple continuances requested by Robinson for his legislative activities, though not the subject of this contempt charge, caused considerable delay in bringing this case to trial. Virginia Code Ann. § 30-5 stems from "long-standing common law and constitutional doctrines of legislative immunity that ensure that no legislator can be summoned into court as a means of taking him or her away from his or her legislative responsibilities." Guidelines on Legislative Continuances, House of Delegates Committee on Rules (April 21, 1998). Implicit in § 30-5 is the good-faith duty of a legislator lawyer not to accept representation "where it is clear that a party may be seeking out a legislator to act as a lawyer simply to have the opportunity to take advantage of the legislative continuance for purposes of delay." Id.

In cases where, as here, a Grand Jury has found probable cause to believe that the defendant has possessed a large amount of cocaine with intent to distribute it, the public has as much interest as the defendant himself in a speedy trial. That is particularly true in cases, like this one, where the defendant remains free on bond awaiting trial. The lofty purposes behind § 30-5 — as historically sound and jurisprudentially valid as they may be — are not furthered by defendants who deliberately seek out legislator-lawyers as a means of tapping their near-automatic delay powers.

This is not the first time Robinson has heard these concerns. For many years, he has been the subject of scrutiny for his unrestrained use of his legislative continuance privilege. See generally Steve Stone, "'I Accept Responsibility' — In Letter, Lawyer Laments Mistakes in Use of Legislative Privilege and Apologizes," The Virginian-Pilot, Dec. 28, 1997, at A1 (Robinson publicly accepted "responsibility" for his actions, acknowledged his "error in judgment," and stated his "intention to be far more judicious in

[his] use of the privilege."). The facts of this case put in doubt the sincerity of Robinson's public *mea culpa*.

On August 8, 2001, after unsuccessfully seeking to suppress evidence incriminating the defendant, Robinson requested and received another continuance of the trial. Though the Commonwealth was "ready to go forward to trial," Robinson claimed to need time to "advise his client of some issues" in light of the Court's ruling. Transcript of Proceeding at 2 (Aug. 8, 2001). With Robinson's commitment that he and his client would be available at 2:00 p.m. on September 21, the Court continued the trial to that date and time on the defendant's motion. *See* Order of August 8, 2001 (Delk, J.). Even so, the presiding judge expressed to Robinson "the Court's concern about the age of this case." Transcript of Proceeding at 2 (Aug. 8, 2001) (Delk, J.).

In a completely different matter, Robinson represented Gwen Hardison in the Richmond Division of the U.S. District Court for the Eastern District of Virginia. *See United States v. Hardison*, Crim. No. 3:01CR00112-04 (E.D. Va. 2001). Having already pleaded guilty to bank robbery, Hardison was scheduled to be sentenced by U.S. District Judge Robert E. Payne on September 17 — a hearing of a type that might last an hour at most. Four days before the September 17 sentencing hearing, Robinson initiated a telephone conference call between himself, the federal prosecutor, and Judge Payne. During this conference, Robinson stated that he had a scheduling conflict with the September 17 sentencing hearing (because of legislative duties) and asked that the hearing be continued.

As the transcript of the telephone call with Judge Payne discloses, Robinson commented that he would "change some other things" in order to be available on September 21. Transcript of Hearing at 9 (Sept. 13, 2001) (Exhibit 2). Judge Payne offered to schedule the sentencing for the afternoon of September 20, but Robinson declined. *Id.* at 12. At no time did Robinson alert Judge Payne to the fact that these "other things" involved a state court trial. Nor, for that matter, did Judge Payne know the state court proceedings had been delayed for over a year due to a perpetual series of continuances by Robinson.

Trial courts in Virginia strive to bring the great majority of criminal cases to trial within 120 days of arrest. *See* Judicial Council of Virginia Case Processing Time Guidelines (July 1, 1991). This difficult, but vitally important, goal is impossible to reach in cases where criminal defense counsel persistently seek every avenue of delay.

On September 18, Robinson sent a telefax to the Suffolk Clerk of Court stating: "Due to a *Federal Trial* which is scheduled in Richmond, I must respectfully request a continuance. . . ." Robinson Telefax to Murden (Sept.

18, 2001) (emphasis added). Robinson, however, never consulted with the Court or made any effort to determine if the Court would grant his motion. At no time prior to calling the case for trial on September 21 did the Court grant any continuance or give Robinson any reason to believe he did not have to appear for trial. On Friday, September 21, the day of trial for Michael Angelo Foulks, Robinson's client appeared; Robinson did not.

On Monday, September 24, the Court issued a show cause order requiring Robinson to explain why he should not be found in contempt of court. A few days later, Robinson gave two interviews to news media in which he offered a public defense to the show cause order. In an article in the statewide publication *Virginia Lawyers Weekly*, Robinson stated that "his client's safety required that the sentencing hearing be conducted as soon as possible." Dawn Chase, "Lawyer Set To Be in Two Courts Now Faces Contempt," *Virginia Lawyers Weekly*, Sept. 27, 2001, http://www.virginialaw.com/contempt.htm. Robinson also asserted that "he did not tell Payne of the state court conflict because of the urgency of the federal matter. . . ." *Id.* The state court judge, Robinson said, was "not aware of all the details that led to the scheduling conflict." *Id.* Robinson explained that he "could not comment on the details of the federal case, because the case is under seal, but he plans to explain them to [the state court judge] in sidebar at the show-cause hearing, scheduled for October 5." *Id.*

Robinson also made public statements to a Norfolk-based newspaper, *The Virginian-Pilot*. In this interview, Robinson squarely placed the blame for the scheduling conflict not on his concern over his client's safety, but on the federal judge. The federal case was "pressing," Robinson asserted, and the "federal judge wanted to proceed [on September 21] for matters I cannot discuss right now." Matthew Roy, "Lawyer in Hot Water Again Over Missing Court Date," *The Virginian-Pilot*, Sept. 28, 2001, at B1. As to his earlier statement about having a federal trial (rather than a mere sentencing hearing), Robinson brushed it aside with the comment: "If you want to split hairs, do so." *Id.* All of these matters, Robinson explained, "will be adequately fleshed out when we have the hearing on October 5." *Id.*

On October 4, the day before the show-cause hearing, Robinson's counsel called the Court seeking a continuance of the hearing. Counsel claimed that he had only begun to focus on the case a day or two before, and thus, needed more time to prepare his defense. The Court denied the motion.

Also on October 4, Robinson received a letter from Judge Payne (copied to this Court) stating that he was "quite distressed" by Robinson's public statements because "they paint a fundamentally different picture than what the record shows about the continuance of Ms. Hardison's sentencing hearing

from September 17 to September 21." Payne Letter to Robinson at 1 (Oct. 3, 2001) (Exhibit 3). Judge Payne pointed out that at no time did Robinson express any concern over expediting the sentencing hearing due to concerns over his client's safety. *Id.* at 3. That topic "never was raised as a reason" for rescheduling the sentencing hearing. *Id.* To the contrary, as the transcript shows, Robinson wanted to put off the sentencing hearing as long as possible because his client (a convicted bank robber) wanted "to spend as much time out as she can." Transcript of Hearing at 3 (Sept. 13, 2001) (Exhibit 2); *see also* Payne Letter to Robinson at 2 (Oct. 3, 2001) (Exhibit 3) (Robinson's client "wanted to remain out of confinement for as long as possible."). Moreover, Judge Payne made clear that "the file in this case is not under seal." Payne Letter to Robinson at 3 (Oct. 3, 2001) (Exhibit 3). Nothing in the record, Judge Payne pointed out, suggested any secret federal reason for the rescheduling.

As to Robinson's laying the blame on the federal court, Judge Payne handled that suggestion this way: "If one did not know better, one might think from those statements that you intended to convey the notion that you were forced by me to move the state court trial because federal interest necessitated having the sentencing on September 21, a circumstance shown in the September 13 transcript not to have been the case at all." *Id.* at 4. He cautioned Robinson further: "I certainly expect that you will not advance [at the show-cause hearing] reasoning such as that in explaining why you did not disclose the existence of the state court case during the September 13 hearing." *Id.* "I have asked Judge Kelsey to provide me with a copy of the transcript of the hearing that he is to hold on October 5 so that I will be fully informed on what occurs there." *Id.*

As to the state and federal court protocol governing scheduling conflicts, Judge Payne noted that the longstanding rule of comity (respected for decades by lawyers practicing in both court systems) is that "the case first scheduled has priority." *Id.* at 3. "Furthermore," Judge Payne continued, "I cannot envision any circumstance when a routine federal sentencing would ever preempt a state court trial." *Id.* "Hence, I am troubled by the incomplete disclosure made when, on September 13, you responded to my question about your availability on September 21 affirmatively and with the statement that you would have to 'change some other things' in order to be available." *Id.*

Finally, on a practical point completely overlooked by Robinson, Judge Payne noted that the federal sentencing hearing on September 21 was scheduled for 11:00 a.m. and ended at 11:45 a.m. *Id.* at 2. For this reason, Judge Payne thought it "doubtful" that Robinson "reasonably could have expected the sentencing in Ms. Hardison's case to have precluded [his]

attendance at a trial that began in Suffolk at 2:00 p.m." *Id.* at 3. "However, had I been informed that there was even a possibility that the scheduling of Ms. Hardison's sentencing on September 21 would cause you to miss a previously scheduled state court trial, I would not have scheduled the sentencing on that date." *Id.*

Judge Payne also noted that Robinson failed to file timely objections to the federal presentence report. *See* Payne Letter to Robinson at 2 (Oct. 3, 2001) (Exhibit 3); *see generally* Fed. R. Crim. P. 32(b)(6)(B) (fourteen day deadline for filing objections to federal presentence report). As a result of Robinson's neglect, he forfeited his client's legal standing to contest the information contained in the presentence report. *United States v. Morsley*, 64 F.3d 907, 914 (4th Cir. 1995). For this reason, Judge Payne refused to consider Robinson's untimely objections raised for the first time at the sentencing hearing on September 21. *See* Transcript of Sentencing Hearing at 3, 5 (Sept. 21, 2001) ("I'm not going to hear the objection, Mr. Robinson," Judge Payne stated, "[b]ecause it was not presented to the probation officer . . . nor was it filed here in time.").

At the show-cause hearing on October 5, Robinson entered a *nolo contendere* plea offering no contest to the contempt of court charge. With Robinson's consent, the Court entered into the evidentiary record its earlier show-cause order (Exhibit 1), the transcript of the September 13 conference call with Judge Payne (Exhibit 2), Judge Payne's letter to Robinson (Exhibit 3), and Judge Payne's order releasing the sentencing transcript (Exhibit 4). The Court thereafter accepted Robinson's plea and pronounced him guilty as charged. The Court took the matter of punishment under advisement and gave Robinson the opportunity to file a written response to the matters raised in Judge Payne's letter. *See* Partial Hearing Transcript at 1 (Oct. 5, 2001) ("What I would like, Mr. Robinson, is for you to address, if you choose, those matters, because they directly bear, in my judgment, on the proportionality and the quantum of punishment."). The Court set a two-week deadline as a "date certain" for receipt of Robinson's response. *Id.*

On October 18, the day before the two-week deadline, the Court received a telefax from two lawyers stating that they have "just been retained" to represent Robinson and could not give a "reasoned and appropriate" response by the deadline because they "don't really know enough about the circumstances" of this case or Robinson's planned efforts at avoiding similar problems in the future. Counsel Letter to Court at 1 (Oct. 18, 2001). They proffered that Robinson intended to make "substantial changes in office and law practice procedure which [they] believe will eliminate many problems with continuances of cases which have occurred in the past." *Id.* at 2.

While the Court will accept counsel's proffer and will assume Robinson will make these changes, further postponements of this case would be unwarranted. Under Virginia law, after a trial court enters a finding of guilt, the sentence should be pronounced without "unreasonable delay." Va. Code Ann. § 19.2-298 (Michie 2000). All the more, such delay should be avoided by a court engaged in a summary contempt proceeding under Va. Code Ann. § 18.2-456 (Michie 1996). For these reasons, the Court sees no just reason to delay this matter further.

Anticipating the Court's ruling, on October 19, Robinson's attorneys forwarded a hand-delivered letter proposing various recommended changes that they believe would avoid similar scheduling problems in the future. *See* Counsel Letter to Court at 1-2 (Oct. 19, 2001). Robinson also attached a letter offering additional explanations for his failure to appear, including his "very distinct impression from Judge Payne, though unspoken" that the sentencing needed to be set quickly to avoid his client's imminent arrest. Robinson Letter to Court at 3 (Oct. 19, 2001). Given those circumstances, Robinson argues, he "felt added pressure" to schedule the federal sentencing hearing on September 21 notwithstanding the previously scheduled trial in the Suffolk Circuit Court. *Id.* In his letter, Robinson also notes his agreement to his attorneys' recommendations to create a "book of procedures with regard to local rules and policies regarding continuances," to hold a "weekly docket conference" with his staff, and to initiate a sixty-day "outlook," revised weekly, to identify potential scheduling conflicts. *Id.*

A plea of *nolo contendere* implies a confession of "the truth of the charge" and agrees "that the court may consider him guilty" for the purpose of imposing judgment and sentence. *Commonwealth v. Jackson*, 255 Va. 552, 555, 499 S.E.2d 276, 278 (1998) (quoting *Honaker v. Howe*, 60 Va. (19 Gratt.) 50, 53 (1869)); *see also Clauson v. Commonwealth*, 29 Va. App. 282, 288-92, 511 S.E.2d 449, 452-54 (1999). Though a plea of *nolo contendere* means literally "I do not contest it," the plea admits "every essential element of the offense" that has been well pleaded in the charge. *Clauson*, 29 Va. App. at 289-90, 511 S.E.2d at 452-53 (quoting *Lott v. United States*, 367 U.S. 421, 426 (1961)). "Hence, it is tantamount to an admission of guilt for the purposes of the case, and nothing is left but to render judgment, for the obvious reason that in the face of the plea no issue of fact exists, and none can be made while the plea remains of record." *Id.* (internal quotation marks omitted). The plea,

therefore, "carries with it some of the same consequences as a plea of guilty." *Id.*[2]

As a result, Robinson's plea serves as a *de facto* guilty plea to the well-pleaded allegations in the Court's show-cause order. That order explained that, under Va. Code Ann. § 18.2-456(1), the Court has the power to issue summary contempt sanctions against any officer of the court guilty of misbehavior in close enough proximity "as to obstruct or interrupt the administration of justice." *See also* Va. Code Ann. § 18.2-457 (summary contempt sanctions include up to ten days in jail and fine of $250.00). As the Virginia Court of Appeals has defined the term:

> "Contempt is defined as an act in disrespect of the court or its processes, or which obstructs the administration of justice, or tends to bring the court into disrepute." 4A Michie's Jurisprudence, *Contempt*, § 2 (Repl. Vol. 1983). Any act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice is contempt.

*Brown v. Commonwealth*, 26 Va. App. 758, 762, 497 S.E.2d 147, 149 (1998) (citing *Potts v. Commonwealth*, 184 Va. 855, 859, 36 S.E.2d 529, 530 (1946), and *Carter v. Commonwealth*, 2 Va. App. 392, 396, 345 S.E.2d 5, 7-8 (1986)).

Under Virginia law, an attorney's "actions in scheduling multiple matters for trial in different courts in different jurisdictions at the same time" supports the conclusion that such conduct constitutes "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." *Brown*, 26 Va. App. at 762, 497 S.E.2d at 149 (citing *Murphy v. Maryland*, 416 A.2d 748, 756, n. 11 (Md. Ct. Spec. App. 1980)). A failure to appear also violates a court's order setting the trial date and implicitly commanding counsel to appear on that date. *See* Va. Code Ann. § 18.2-456(5) (forbidding "[d]isobedience or resistance of an officer of the court . . . to any lawful process, judgment, decree, or order of the court.").

In short, "a lawyer's willful absence from his client's trial, without a legitimate reason, is contemptuous." *United States v. Marx*, 553 F.2d 874, 876 (4th Cir. 1977); *see also United States v. Linney*, 134 F.3d 274, 277 (4th Cir.

---

[2] Except for challenges to the court's jurisdiction, no appeal lies from a plea of *nolo contendere*. *Clauson v. Commonwealth*, 29 Va. App. 282, 511 S.E.2d 449 (1999); *Limbrick v. Commonwealth*, No. 2568-99-2 (Va. App. Dec. 12, 2000) (unpublished).

1998) (lawyer-legislator found in contempt for failure to attend trial claiming, among other things, that legislative duties "demanded his attention"); *In re Thomson*, 12 Va. Cir. 27, 1986 WL 401747 (Winchester 1986) (Whiting, J.); 4A Michie's Jurisprudence, *Contempt*, § 14, at 266 (1999) (an attorney's unexcused "willful absence from his client's trial" constitutes contempt of court).

Robinson's *nolo contendere* plea serves as an implied judicial admission that (i) he rescheduled a federal court sentencing hearing knowing that it would conflict with his obligation to appear in this Court for the trial of Michael Angelo Foulks; (ii) he did not appear for the trial or receive any continuance by the Court excusing his absence; (iii) his letter to the Suffolk Clerk of Court, no doubt intended to be passed on to this Court, did not disclose that the "Federal Trial" was not a trial at all, but a mere sentencing hearing; and (iv) his letter failed to disclose that his federal court sentencing hearing had only days before been rescheduled for September 21. *See Commonwealth v. Foulks*, (Sept. 24, 2001), [*supra*], (specific elements of contempt charge outlined in the show-cause order).

These facts conclusively establish that Robinson's actions in "scheduling multiple matters for trial in different courts in different jurisdictions at the same time" fall within that category of misbehavior which tends to obstruct or interrupt the administration of justice within the meaning of Va. Code Ann. § 18.2-456(1). *Brown*, 26 Va. App. at 762, 497 S.E.2d at 149; *see also* Va. Code Ann. § 18.2-456(5). To be sure, Robinson's actions are altogether less pardonable than those of the attorney found in contempt of court in *Brown*, who claimed he "wasn't aware" of the hearing because he failed to make the proper notation in his "docket book." *Brown*, 26 Va. App. at 761, 497 S.E.2d at 149.

Though not contesting his guilt, Robinson stubbornly clings to the view that he had no duty to appear at the September 21 trial because the prosecutor had agreed to a continuance. Even if that factual assertion were true, it simply misses the point. No prosecutor has authority to continue a criminal trial. Virginia law recognizes the "obvious imperative that the trial judge, rather than the prosecutor or the accused, controls the trial docket." *Baity v. Commonwealth*, 16 Va. App. 497, 502, 431 S.E.2d 891, 894 (1993) (*en banc*). Our statutes contemplate "an orderly procedure for setting criminal cases and expressly places the control of that process under the supervision of the trial court, not a party litigant." *Powell v. Commonwealth*, 29 Va. App. 745, 750, 514 S.E.2d 785, 788 (1999) (quoting *Williams v. Commonwealth*, 2 Va. App. 566, 569, 347 S.E.2d 146, 148 (1986)).

With Robinson's guilt established, the Court must determine the appropriate sentence. As a general rule, the sentencing court should concern itself with making "the punishment fit the offender and not merely the crime." *McClain v. Commonwealth*, 189 Va. 847, 859-60, 55 S.E.2d 49, 55 (1949). In doing so, a trial court may consider any "responsible unsworn" or "out-of-court" information relevant to the issue of punishment. *Harris v. Commonwealth*, 26 Va. App. 794, 807-08, 497 S.E.2d 165, 171 (1998); *Alger v. Commonwealth*, 19 Va. App. 252, 258, 450 S.E.2d 765, 768 (1994) ("In the sentencing phase of a case, the trial court may rely upon hearsay testimony."); *see also Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) (court may consider defendant's "life and characteristics"). As the Virginia Supreme Court has explained:

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.

*McClain*, 189 Va. at 859-60, 55 S.E.2d at 55 (quoting *Williams v. New York*, 337 U.S. 241, 246 (1949)). "This broad rule of inclusion is tempered by the requirement that the information bear some indicia of reliability." *Moses v. Commonwealth*, 27 Va. App. 293, 302, 498 S.E.2d 451, 456 (1998) (citing *Alger v. Commonwealth*, 19 Va. App. 252, 258, 450 S.E.2d 765, 768 (1994)).

In this case, Robinson consented to the introduction into evidence of each of the four exhibits considered by the Court. Even without this concession, the Court finds the information in those exhibits has sufficient "indicia of reliability" to ensure its evidentiary value for purposes of sentencing. *Moses*, 27 Va. App. at 302, 498 S.E.2d at 456. Moreover, at the October 5 hearing, the Court specifically directed Robinson's attention to the misleading public statements for which Judge Payne took him to task. *See* Partial Hearing Transcript at 1 (Oct. 5, 2001). To date, however, Robinson has not denied making these statements or offered any explanation for them that the Court finds plausible. The Court simply does not accept Robinson proffer that he received during his telephone call with Judge Payne a "very distinct impression from Judge Payne, though unspoken" that Robinson's client would be arrested if the sentencing were not conducted as early as September 21.

As a penalty for summary contempt, Virginia law authorizes a fine of up to $250 and a jail term not to exceed ten days. *See* Va. Code Ann. § 18.2-457. Though found in contempt before by other courts, Robinson has suffered only monetary consequences. *See, e.g., Commonwealth v. Robinson*, No. CR70I24254-00 (Newport News Cir. Ct. 2000) ($250 fine imposed); *Commonwealth v. Robinson*, No. CR99003260-00 (Norfolk Cir. Ct. 1999) ($100 fine and $186 in costs assessed); *Commonwealth v. Robinson*, No. GT98079292-02 (Va. Beach Gen. Dist. Ct. 1999) ($50 fine and $40 in costs levied); *cf. Givens v. McDemmond*, Civ. No. 2:99cv662 (E.D. Va. 2000) (federal court found Robinson's failure to appear "in direct violation of a clear and specific court order" and issued a sanction requiring Robinson to handle two *pro bono* criminal cases).

The unique circumstances of this case compel the conclusion that a $250 fine would be a negligible sanction, one that would acutely undervalue the wrongfulness of Robinson's conduct. His failure to appear, either standing alone or coupled with his recidivist past, warrants this conclusion. The disingenuous quality of Robinson's reasons for not appearing, advanced both before and after the aborted trial, only adds to the contemptuous nature of his behavior. As Judge Payne well put it, Robinson's explanations "paint a fundamentally different picture" from the truth. Payne Letter to Robinson at 1 (Oct. 3, 2001) (Exhibit 3).[3] Add to this Robinson's temerarious request (a day before the show-cause hearing) for yet another continuance, which, if granted, would have been his eighth in this case.

Our citizens have an uncompromising right to expect courts to treat all people alike. A judiciary committed to the promise of equal treatment before the law — so essential to the moral authority of the courts — cannot collaborate with those who, for whatever reason, believe themselves deserving of preferential treatment. Robinson's conduct puts the institutional reputation of the judicial branch of government at risk by leaving the false impression that some are more equal than others. That corrosive impression, if left unrefuted, would over time enfeeble the public's perception of the integrity of the judiciary. If truth be told, Robinson's "disrespect of the court" not only obstructs the administration of justice, it "tends to bring the court into disrepute." *Brown*, 26 Va. App. at 762, 497 S.E.2d at 149 (citation omitted).

---

[3] Our judicial system, in theory and in practice, "depends on a most jealous safeguarding of truth and candor, and the system can provide no harbor for clever devises to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *Jones v. Clinton*, 36 F. Supp. 2d 1118, 1131 (E.D. Ark. 1999) (citations and internal quotation marks omitted).

Any other person found guilty of contempt under these circumstances would surely receive a jail term. Robinson deserves no less.

The Court sentences Robinson to ten days in jail and suspends five of those days, for an active incarceration of five days. He shall submit to the classification office of Western Tidewater Regional Jail on October 26 by 4:00 p.m. to serve this sentence. The Court authorizes the jailer, if he is so advised, to permit Robinson to serve his five-day sentence over consecutive weekends beginning on October 26 at 4:00 p.m.

The remaining five days will be suspended for five years on the following terms: (i) Robinson must timely attend all trials and hearings scheduled in the Suffolk Circuit Court involving his clients unless the presiding judge expressly excuses his absence; (ii) in the event Robinson seeks a continuance of any such trial or hearing, he must file a written motion verifying that he has discussed the continuance request with his client and secured the client's consent to the continuance;[4] (iii) with respect to cases pending in the Suffolk Circuit Court, Robinson must faithfully comply with all ethical duties imposed by the Virginia Rules of Professional Conduct; and (iv) in all other respects Robinson must be on good behavior during his five-year term of suspension.[5] If Robinson violates any of these conditions in any material way, the remaining jail term will be imposed.[6]

---

[4] This requirement also applies to continuances pursuant to Virginia Code Ann. § 30-5. Under this statute, "it is important to recognize that the Code does not grant the right to a continuance to the member of the legislature but rather grants this right to the party that has chosen to retain a member of the legislature as his or her attorney." Guidelines on Legislative Continuances, House of Delegates Committee on Rules (April 21, 1998). In other words, the continuance right embedded in § 30-5 is not simply for Robinson's personal convenience, but is intended to give Robinson's clients the option of either seeking a continuance (and retaining Robinson as counsel) or electing their right to a speedy trial (and hiring someone else to replace Robinson). Under no circumstances, legally or ethically, can Robinson seek a § 30-5 continuance in direct contravention of his client's stated desire to avoid any further delay.

[5] The concept of "good behavior" is not "limited to an avoidance of criminal activity." *Holden v. Commonwealth*, 27 Va. App. 38, 42, 497 S.E.2d 492, 494 (1998) (citation omitted). Virginia courts have long held that "iniquitous, but not necessarily illegal, conduct" can violate the "good behavior" condition. *Id.*

[6] *See* Va. Code Ann. § 19.2-303.1 (Michie 2000) ("In any case where a court suspends the imposition or execution of a sentence, it may fix the period of suspension for a reasonable time, having due regard to the gravity of the offense, without regard to the maximum period for which the defendant might have been sentenced.").

The Court also directs Robinson to pay a $250.00 fine to the Clerk of Court within ten days of this Opinion and Order. It is so ordered.