**Alexandria**

TERRY ALTON ALGER

v.

COMMONWEALTH OF VIRGINIA

No. 0404-93-4

Decided November 22, 1994

COUNSEL

Robert R. Donlan (Robert R. Donlan, Esquire, P.C., on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

**MOON, C.J.**—Terry Alton Alger entered guilty pleas to three counts of common law burglary, three counts of statutory burglary, seven counts of grand larceny, and one count of felonious destruction of property. The trial judge ordered a presentence report which, along with victim impact statements, was properly filed before the sentencing hearing. A portion of Alger's sentence was suspended in part upon condition that he make restitution. On appeal, Alger contends the court erred (1) in ordering restitution to insurance companies for any amount they paid the victims of his crimes, and (2) in determining the amount of restitution from

evidence contained in the victim impact statements attached to the presentence report. We hold that the court properly ordered restitution to the insurance companies and did not err in relying upon evidence contained in the victim impact statements.

Alger's attorney received the presentence report six days before the sentencing hearing on January 25, 1993. Alger's counsel told the judge that he had reviewed the report and had been given "a sufficient period of time to discuss the contents with the defendant." He declined the opportunity to cross-examine the probation officer who had prepared the report. Counsel proffered for Alger that Alger had a $600 per month child support obligation and had been suspended from his job and expected to be terminated. When the judge then stated that he had not seen an offer of restitution from Alger, Alger's counsel stated "my client is certainly prepared to make restitution as may be ordered by the court." Before imposing sentence, the judge stated:

> I am going to order restitution in these cases, generally. For those that were covered by insurance, I am going to order the restitution in the amount of the insurance. If there is anything that is not covered, where there is a discrepancy between what the insurance company paid and what the victim claims, they can address that with civil proceedings.

The judge then sentenced the defendant to a total of seventy years with all but ten years suspended on the condition, among others, that Alger make restitution. When the judge took up the matter of restitution, Alger's counsel objected to any restitution beyond the deductible amount that the insurance carriers had not paid the direct victims. Counsel stated there was no authority for the court to order restitution to insurance carriers, and counsel also objected to the amounts of restitution claimed by the insurance companies. Counsel stated that it was possible that the victims had inflated their claims to the insurance companies. The judge called for any proof of the alleged inflation and advised counsel that the matter had been set for hearing on the presentence report and that if Alger had wished to contest the evidence in the presentence report he could have subpoenaed persons mentioned in the report or produced evidence. Alger's counsel contended that he did not realize that the court would be considering making restitution to the insurance carriers and that the

Commonwealth should have to prove the amount with live witnesses. The court disallowed some of the claims of the victims which for the most part were for remote or indirect losses as opposed to direct losses. The judge ordered restitution in the full amount paid by the insurance companies, with allowance for proven salvage and recovery, and payment to the victims of their deductible amounts, and some other items not covered by insurance.

First, we turn to whether it is proper for a court to order restitution to an insurance carrier.

Code § 19.2-305.1 provides in pertinent part:

A. Notwithstanding any other provision of law, no person convicted of a crime in violation of any provision in Title 18.2, . . . which resulted in property damage or loss, shall be placed on probation or have his sentence suspended unless such person shall make at least partial restitution for such property damage or loss . . . .

Alger maintains the court is powerless to order restitution to an insurance company because a corporation is not an "individual" who has suffered economic harm as a "direct result of the commission of a felony," as defined in Code § 19.2-299.1, the victim impact statute. He maintains that the insurance companies are neither "victims" nor "aggrieved parties" within the meaning of those terms in Code § 19.2-303, concerning probation and the permissible conditions thereof.[1]

If we accepted Alger's claim that these statutes prohibit a corporation from being an "individual" to whom restitution may be ordered because it is neither a victim nor an aggrieved party, such an interpretation would render meaningless the provision of Code § 19.2-305.1 stating that "[n]otwithstanding any other provision

---

[1] Code § 19.2-303 provides:
After conviction, . . . the court may suspend imposition of sentence or suspend the sentence in whole or in part and in addition may place the accused on probation under such conditions as the court shall determine or may, as a condition of a suspended sentence, require the accused to make at least partial restitution to *the aggrieved party or parties* for damages or loss caused by the offense for which convicted . . . .
(Emphasis added).

restitution must be ordered," or lead to the absurd result that one who is convicted of stealing from a corporation may not be placed on probation.

Long before victim impact statements were mandated (Code § 19.2-299.1 adopted in 1984) and specific statutes regarding restitution were adopted, courts were ordering restitution. *See Payne v. Commonwealth*, 222 Va. 485, 281 S.E.2d 873 (1981); *Revell v. Commonwealth*, 215 Va. 708, 213 S.E.2d 756 (1975). To follow Alger's argument, we would have to hold that the legislature intended to curtail the class of victims to whom restitution could be ordered.

■ Code § 19.2-299.2 defines victim as "an individual . . . who has suffered . . . economic harm" from the crimes. A corporation may be the "victim" of a robbery, although the agents or employees are the direct victims. *See Crawford v. Commonwealth*, 217 Va. 595, 231 S.E.2d 309 (1977).

■ An insurance carrier, that has paid a theft or casualty claim as a result of the wrongdoing of a criminal defendant, stands in the place of the victim and may in the name of the victim pursue a civil claim against the third party. *See Nationwide Mut. Ins. Co. v. Jewel Tea Co.*, 202 Va. 527, 118 S.E.2d 646 (1961).

■ Even if we accept some ambiguity having been left by the adoption in 1984 of statutes dealing with restitution, statutes addressing the same subject are to be read *in pari materia*. *See Lillard v. Fairfax County Airport Auth.*, 208 Va. 8, 12, 155 S.E.2d 338, 342 (1967). *In pari materia* is the rule of statutory construction that "statutes which relate to the same subject matter should be read, construed and applied together so that the legislature's intention can be gathered from the whole of the enactments." *Black's Law Dictionary* 791 (6th ed. 1990).

We construe the statutes as declaring a legislative intent to provide for restitution for the victims of crimes, including corporations. We cannot conclude that the legislature intended by the most recent legislation to limit the power of the courts to order restitution.

Other states considering this issue have construed "aggrieved party" and "victim" to include both the insurance company of the party from whom property was stolen and the insured whose prop-

erty was stolen or damaged. *See, e.g., People v. Foster*, 18 Cal. Rptr. 2d 1, 8 (Cal. App. 1993); *State v. Froneberger*, 344 S.E.2d 344, 348 (N.C. App. 1986); *People v. Smith*, 754 P.2d 1168, 1171 (Colo. 1988).

Next, we turn to whether the court erred in relying upon the victim impact statements in fixing the amount of restitution.

Code § 19.2-299(A) provides:

When a person is tried upon a felony charge . . . the court may, . . . before imposing sentence direct a probation officer to thoroughly investigate and report of the accused's . . . criminal record . . ., and all other relevant facts, to fully advise the court so the court may determine the appropriate sentence to be imposed. The probation officer, after having furnished a copy of this report at least five days prior to sentencing to counsel for the accused and the attorney for the Commonwealth for their permanent use, shall submit his report in advance of the sentencing hearing to the judge in chambers . . . The probation officer shall be available to testify from this report in open court in the presence of the accused, who shall have been advised of its contents and *be given the right to cross-examine the investigating officer as to any matter contained therein and to present any additional facts bearing upon the matter.*

(Emphasis added).

The evidence relied upon by the judge to determine the amount of restitution was contained in the victim impact statements as a part of the presentence report. When the presentence report was offered into evidence, counsel took no exception to any portion of it and declined to cross-examine the probation officer concerning the content of the report. Counsel contended the evidence contained in the presentence report was hearsay and the Commonwealth should put on witnesses who could be cross-examined concerning the amount of the losses.

The court, "in its discretion, shall determine the amount [of restitution] to be repaid by the defendant and the terms and conditions thereof." Code § 19.2-305.1; *see also Deal v. Commonwealth*, 15 Va. App. 157, 160, 421 S.E.2d 897, 899 (1992).

■ The burden of proving the amount of the loss for purposes of restitution is by a preponderance of the evidence. *United States v. Wright*, 873 F.2d 437, 441 (1st Cir. 1989); *Dickens v. State*, 556 So. 2d 782, 784 (Fla. Dist. Ct. App. 1990).

■ In the sentencing phase of a case, the trial court may rely upon hearsay testimony. *O'Dell v. Commonwealth*, 234 Va. 672, 701, 364 S.E.2d 491, 508, *cert. denied*, 488 U.S. 871 (1988); *Thomas v. Commonwealth*, 17 Va. App. 600, 602, 439 S.E.2d 864, 866 (1994). The information relied upon by the court must, however, have some indicia of reliability. *See United States v. Fatico*, 579 F.2d 707, 712-13 (2d Cir. 1978), *cert. denied*, 440 U.S. 1073 (1980).

All of the information upon which the trial court based its decision was furnished to counsel six days prior to the hearing. The probation officer testified that he had personally contacted each insurance company or its agents and obtained the actual value of the property stolen, recovered, claimed on insurance, and reimbursed through insurance coverage. Counsel knew or should have known that when he went to the sentencing hearing the court was required to consider the amount of restitution if it was to suspend all or any portion of the defendant's sentence.

Here, the police had the initial reports of the theft by the victim and estimates of the amount of loss. It may be true in many instances that the amounts paid by the insurance carriers are more than the initial estimates contained in police reports. However, that alone is not proof that the settlement made by the insurance company is not reflective of the true loss to the direct victim. The information concerning the initial estimates of loss was also in the report, and defense counsel asked the court to rely upon those estimates for purposes of restitution. There is no showing that the court abused its discretion in accepting the amounts paid by the insurance company and the deductible as proper for purposes of restitution.

We disagree with Alger's contention that payment by an insurance company is not a reliable indicator of true loss. In other areas of the law, proof of the amount paid by one in an arms-length transaction is considered prima facie evidence of the reasonableness of the payment. A bill received by a plaintiff for medical services relating to an injury is prima facie evidence that

the charges in the bill were reasonable and necessary. *Walters v. Littleton*, 223 Va. 446, 290 S.E.2d 839 (1982). In a suit for contribution by one tortfeasor against another, if the defendant maintains the settlement made by plaintiff to the third party was unreasonable, it is for the defendant to prove it. The amount paid is prima facie evidence of the reasonableness of the payment. *Nationwide Mut. Ins. Co.*, 202 Va. at 531, 118 S.E.2d at 649.

Additionally, Code § 19.2-299.1[2] provides that the victim impact statement may not be used in civil actions to determine damages, but does provide that it may be used by the Workers' Compensation Commission to determine the amount to pay in a claim made by a crime victim.

■ We hold that the legislature intended that the victim impact statement be used by the trial judge to determine the amount of restitution. It would indeed be incongruous for the General Assembly to adopt a statute creating a victim impact statement to be used in a sentencing proceeding involving restitution, and for the General Assembly to state specifically that the victim impact statement could not be used to determine damages in a civil case, could be used by the Workers' Compensation Commission to determine a victim's claim, but could not be used to determine a victim's losses in sentencing proceedings involving restitution for which the statute was in part adopted.

Accordingly, the trial court did not err in granting restitution to the insurance carriers and in relying upon the evidence contained in the presentence report to determine the amount of restitution.

*Affirmed.*

Baker, J., and Duff, S.J., concurred.

---

[2] The Victim Impact Statement may be considered by the court in determining the appropriate sentence. A copy of the statement prepared pursuant to this section shall be made available to the defendant or counsel for the defendant without court order at least five days prior to the sentencing hearing. The statement shall not be admissible in any civil proceeding for damages arising out of the acts upon which the conviction was based. The statement, however, may be utilized by the Virginia Workers' Compensation Commission in its determinations on claims by victims of crimes pursuant to Chapter 21.1 (§ 19.2-368.1 *et seq.*) of this title.