COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


DONALD C. BURRIESCI, S/K/A
 DONALD CARL BURRIESCI
                                                        OPINION BY
v.      Record No. 1945-10-2          JUDGE RANDOLPH A. BEALES
                                                      NOVEMBER 8, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

John B. Russell, Jr. (DurretteCrump, PLC, on briefs), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Pursuant to a plea agreement, Donald C. Burriesci (appellant) pled guilty to one count of

obtaining by false pretenses currency with a value of more than $200, in violation of Code

§ 18.2-178.  On appeal, appellant argues that the trial court abused its discretion at sentencing

when it ordered appellant to pay $180,082 in restitution to the Commonwealth of Virginia

Department of Medical Assistance Services (DMAS), the victim in this case.  Appellant

contends that the Commonwealth failed to establish the amount of "actual loss" that resulted

from his criminal conduct.  Finding no abuse of discretion by the trial court, we affirm the trial

court's order of restitution for the following reasons.

I. BACKGROUND

At all times relevant to this appeal, appellant owned and operated Alliance for Seniors, a

company that provided personal and respite care services to Medicaid-eligible clients in the

Richmond area.  Appellant (as owner and operator of the company) entered into a Medicaid

provider agreement with DMAS, which administers the Medicaid program in Virginia. As a condition of the Medicaid provider agreement, appellant agreed to abide by Medicaid's regulations for the providing of care to Medicaid recipients and to abide by Medicaid's regulations concerning the billing and payment for services rendered to Medicaid recipients.

Appellant's company employed personal care aides (PCAs). The responsibilities of a PCA include assisting a Medicaid-eligible client with household services essential to the client's health inside the home and reporting changes in the client's condition or needs. Medicaid's regulations require that personal care services are rendered by fully trained PCAs, who have received a minimum of 40 hours of training relevant to the responsibilities of a PCA. Furthermore, Medicaid's regulations forbid prospective PCAs from "testing-out" in lieu of the required training or being "grandfathered-in" based on past experience.

In disregard of Medicaid's regulations, appellant employed persons as PCAs who had not completed the required training – and many who had received no relevant training at all. Appellant then sought and received reimbursement from DMAS after representing that these persons were fully qualified PCAs with the required training.

In a stipulated statement of facts that was submitted to the trial court, appellant admitted to devising the following "scheme" to defraud the Medicaid program:

> [Appellant] allowed PCAs he employed at Alliance to "test out" or be "grandfathered in" rather than take the 40 hours of DMAS approved training as required by Medicaid. The untrained PCAs were then assigned to Medicaid recipients to provide personal and/or respite care. [Appellant] subsequently billed Medicaid, and received payment from Medicaid, for "services" provided by the untrained and unqualified PCAs. Further, false training certificates were created to cover up the lack of training. The false certificates were signed by a registered nurse that purportedly taught the training, provided a date that training took place, and represented that the full 40 hours of approved training had been provided to the PCA.

Appellant further stipulated that he "extract[ed] money from Alliance PCAs, to which he was not entitled, by charging and receiving payment from Alliance employees for false PCA training certificates that were worthless and invalid according to DMAS regulations, and therefore non-transferable to other personal care provider agencies."

Upon accepting appellant's guilty plea for one count of obtaining money by false pretenses,[1] the trial court sentenced appellant to a 20-year sentence (suspending the entire sentence) and continued the matter for a hearing to determine restitution.

At the restitution hearing, the Commonwealth presented a 12-page exhibit indicating that appellant had received reimbursements from DMAS totaling $180,082 for the services of purportedly fully trained PCAs who had actually received no relevant PCA training.[2] The Commonwealth asserted that the amount of this "overpayment" – money DMAS never would have paid, if it had known that these employees had received no PCA training – represented an amount of restitution that was appropriately attributable to appellant's criminal offense. In response, appellant claimed that the services of these admittedly untrained and unqualified persons must have provided some (unknown) amount of value to DMAS, and he argued that the Commonwealth failed to establish the amount of "actual loss" suffered by DMAS in this case.

---

[1] Appellant was initially charged with four felony counts of obtaining money by false pretenses (under Code § 18.2-178) and one felony count of making false statements or representations in applications for payment (under Code § 32.1-314). Appellant entered into a plea agreement with the Commonwealth, in which he agreed to plead guilty to one count of obtaining money by false pretenses and the Commonwealth agreed to move the trial court to dispose of the remaining three charges by *nolle prosequi*. Pursuant to this plea agreement, appellant agreed that "the appropriate amount of restitution to be paid will be determined by" the trial court.

[2] The Commonwealth did not challenge reimbursements to appellant's business for the services of numerous PCAs who were properly trained and certified according to DMAS requirements.

The trial court ultimately rejected appellant's argument, explaining, "[I]f they did not have the training that DMAS requires[, then] there is no value received from their services." Thus, the trial court ordered appellant to pay restitution to DMAS in the amount of $180,082 (the amount of money DMAS reimbursed appellant for the services of his employees who had actually received no PCA training)[3] and placed appellant on probation for the purpose of monitoring appellant's compliance with this restitution order.

## II. ANALYSIS

On appeal, appellant argues that the trial court abused its discretion when it ordered him to pay $180,082 in restitution to DMAS. He contends that the trial court's restitution order erroneously reflects the amount of appellant's profit from his fraudulent reimbursement claims to DMAS, rather than DMAS's "actual loss," which he claims was never proven at the restitution hearing. We disagree with appellant's argument in light of Virginia's well-established principles governing restitution orders in criminal cases.

### A. THE DISCRETION OF A TRIAL COURT TO ORDER RESTITUTION

In Virginia, when a trial court suspends a defendant's sentence or orders probation, the trial court has authority to order that the defendant "make at least partial restitution" to an "aggrieved party or parties for damages or loss caused by" the offense or offenses for which the defendant was convicted. Code §§ 19.2-303 and 19.2-305(B); see also Code § 19.2-305.1(A). "The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of

---

[3] The Commonwealth actually prepared *two* exhibits – one detailing the amount of money DMAS reimbursed appellant for the services of his employees who had "nonadequate or incomplete training," and the other detailing the amount of money DMAS reimbursed appellant for the services of a smaller subset of appellant's employees who had "no training" as PCAs. The Commonwealth chose to introduce only the latter exhibit at the restitution hearing. Thus, the trial court's restitution order reflects the amount of money DMAS reimbursed appellant for the services of his employees who received no PCA training at all.

all or part of a sentence, and/or restitution payments." Howell v. Commonwealth, 274 Va. 737, 740, 652 S.E.2d 107, 108 (2007).

A trial court has "wide latitude" to make sentencing decisions, such as the ordering of restitution, Deal v. Commonwealth, 15 Va. App. 157, 160, 421 S.E.2d 897, 899 (1992), because "[t]he determination of sentencing lies within the sound discretion of the trial court," Martin v. Commonwealth, 274 Va. 733, 735, 652 S.E.2d 109, 111 (2007). "A sentencing decision will not be reversed unless the trial court abused its discretion." Id. "On appeal, where the restitutionary amount is supported by a preponderance of the evidence and is 'reasonable in relation to the nature of the offense,' the determination of the trial court will not be reversed." McCullough v. Commonwealth, 38 Va. App. 811, 817, 568 S.E.2d 449, 451-52 (2002) (quoting Deal, 15 Va. App. at 160-61, 421 S.E.2d at 899); see Smith v. Commonwealth, 52 Va. App. 26, 30 n.2, 660 S.E.2d 691, 693 n.2 (2008) (noting the well-established preponderance of the evidence standard that is to be used when determining the amount of restitution). Furthermore, "'[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

B. INAPPLICABILITY OF THE DECISION IN HOWELL V. COMMONWEALTH

In Howell, 274 Va. at 739, 652 S.E.2d at 107, the trial court abused its discretion when it ordered the defendant in that case to pay restitution to the victims for the cost of a security system that was installed after the defendant burglarized their business. In reversing the order of restitution in Howell, the Supreme Court explained that a restitution order may include only those damages or losses "which were directly caused by the offense" committed by the defendant. Id. at 741, 652 S.E.2d at 108 (internal quotation marks and citation omitted). Thus, the Supreme Court held that "the installation of a security system, while related to [the

defendant's] burglary, was not *caused* by the offense as required by Code §§ 19.2-303, -305(B), -305.1(A)." Id. at 741, 652 S.E.2d at 109 (emphasis added).

Therefore, in Howell, the trial court's restitution order in that case had been premised on an erroneous legal conclusion – that damages or losses to the victim that "result only indirectly from the offense" may be included in an order of restitution. Id. (internal quotation marks and citation omitted). As both the Supreme Court of the United States and the Supreme Court of Virginia have explained, a trial court "'by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

In this case, however, unlike in Howell, no such abuse of discretion occurred. The issue before the trial court here was not whether appellant's criminal offense constituted the direct cause or simply an indirect cause of DMAS's loss – appellant's offense of obtaining money from DMAS by false pretenses certainly was the *direct* cause of the loss claimed by the Commonwealth. Appellant's own trial counsel acknowledged at the restitution hearing that the decision in Howell was not controlling on the facts of this case, noting that Howell was "not factually an analogous case." Therefore, contrary to appellant's position on appeal, the Supreme Court's decision in Howell actually provides no indication that the trial court in this case abused its discretion when it ordered appellant to pay $180,082 in restitution.[4]

_____

[4] Narrowly focusing on a portion of the Howell opinion in which the Supreme Court relied on opinions from the United States Court of Appeals for the Fourth Circuit as persuasive authority, appellant claims that this Court should follow the Fourth Circuit's analysis in United States v. Harvey, 532 F.3d 326 (4th Cir. 2008), where that court adopted the federal "actual loss" method of analysis for restitution cases. However, in Howell, the Supreme Court applied existing Fourth Circuit case law concerning *the appropriate causation standard* for determining if a cost to the victim is even properly the subject of restitution. Howell, 274 Va. at 740-41, 652 S.E.2d at 108-09. The Supreme Court's 2007 decision in Howell actually *predates* the Fourth Circuit's 2008 decision in Harvey, and the Supreme Court certainly gave no indication in Howell

## C. No Abuse of Discretion by the Trial Court

Here, the trial court considered all of the circumstances relevant to restitution and found that the loss to DMAS caused by appellant's offense was $180,082. See Code §§ 19.2-303, 19.2-305(B), 19.2-305.1(A). Nothing in the record on appeal establishes that this finding by the trial court was arbitrary or otherwise constituted an abuse of the trial court's discretion at sentencing. See Slayton v. Commonwealth, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946) (explaining that the exercise of a judicial discretion "'implies conscientious judgment, not arbitrary action'" (quoting Burns v. United States, 287 U.S. 216, 222-23 (1932))); see also Rhodes v. Commonwealth, 45 Va. App. 645, 650, 613 S.E.2d 466, 469 (2005). Indeed, the trial court's conclusion that appellant owed DMAS restitution in the amount of $180,082 was supported by a preponderance of the evidence and was reasonable in relation to the offense. See McCullough, 38 Va. App. at 817, 568 S.E.2d at 451-52; Deal, 15 Va. App. at 160-61, 421 S.E.2d at 899.

The following evidence supported the trial court's restitution order in this case. Appellant stipulated in the signed statement of facts that he was aware that "Medicaid requires that personal care services be rendered by a fully trained PCA." Appellant also stipulated that he "extract[ed] monies from Medicaid to which he was not entitled" when he "billed Medicaid, and received payment from Medicaid, for 'services' provided by the *untrained and unqualified* PCAs." (Emphasis added). Appellant further stipulated in this signed statement of facts that these "services" were provided by employees of appellant's company who held falsified certifications that "were *worthless and invalid*" under the requirements established by Medicaid and DMAS. (Emphasis added).

---

that the type of analysis later adopted by the Fourth Circuit in Harvey is applicable for the purpose of determining *the amount* of loss directly caused by the offense under Virginia's restitution statutes.

In light of this evidence, the trial court found that DMAS received "no value" from the services of these employees who actually had no PCA training at all. This finding by the trial court was not plainly wrong or unsupported by the evidence. See Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007) ("On review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence."). According to the stipulated statement of facts, those employees of appellant's company were wholly "unqualified" to work as PCAs.[5] They did not, *by definition*, provide personal care services – given appellant's stipulation that personal care services can only be "rendered by a fully trained PCA."[6]

Moreover, the Commonwealth's evidence at the restitution hearing established that DMAS paid appellant $180,082 for what appellant *claimed* were personal care services but were actually provided by persons who had received no PCA training at all. Consistent with the explanation by the Supreme Court of the United States that a trial court may consider at sentencing "responsible unsworn or 'out-of-court' information relative to the circumstances of

---

[5] We note that appellant's stipulation that his employees were "unqualified" to work as PCAs renders the facts in Harvey readily distinguishable from the facts of this case. In Harvey, while the co-defendants fraudulently manipulated the award of a government contract, the government officials overseeing the performance of this contract testified at the co-defendants' trial that they had "no complaints" about the actual performance of the contract. Harvey, 532 F.3d at 340. The same cannot be said in this case – where appellant stipulated that personal care services can *only* be rendered by "fully trained" PCAs and that the employees at issue here were "untrained and unqualified."

[6] Appellant contends that Medicaid offers a "consumer directed care" program where Medicaid recipients may select family members or friends to provide their care. DMAS apparently does not require such caretakers to receive the same training as PCAs, as the Commonwealth acknowledged at the restitution hearing. However, the trial court was not required to accept appellant's unsupported claim that his admittedly unqualified PCAs provided value to DMAS. A trial court's determination of the amount of restitution owed by the defendant may be "based on facts proved either at the trial of the offense or at the sentencing hearing, *where both the defendant and the Commonwealth have an opportunity to present relevant evidence on the issue*." McCullough, 38 Va. App. at 815, 568 S.E.2d at 450-51 (emphasis added). Here, the Commonwealth presented evidence establishing its amount of loss, and appellant presented no evidence to the contrary. Although appellant certainly was not *required* to present evidence at the restitution hearing, the trial court did not abuse its discretion when it chose to accept the Commonwealth's evidence.

the crime," Williams v. Oklahoma, 358 U.S. 576, 584 (1959), this evidence certainly informed the trial court's calculation of the amount of loss to DMAS that was caused by appellant's offense. See Alger v. Commonwealth, 19 Va. App. 252, 259 n.2, 450 S.E.2d 765, 769 n.2 (1994) (holding that trial courts may properly consider victim impact statements when determining the appropriate amount of restitution owed by a defendant). The trial court was under no obligation to accept appellant's wholly speculative assertion that his untrained and unqualified employees provided some unknown amount of value to DMAS.

After consideration of all the evidence, the trial court found that the loss to DMAS that was caused by appellant's criminal offense amounted to $180,082. The trial court, accordingly, ordered appellant to pay $180,082 to DMAS as restitution for his offense. This amount of money represented "a reasonable amount of restitution" in this case. Smith, 52 Va. App. at 34, 660 S.E.2d at 695.

In Howell, the Supreme Court defined "restitution" as "'a restoration of something to its rightful owner: the making good of or giving an equivalent for some injury (as a loss of or damage to property).'" Howell, 274 Va. at 740, 652 S.E.2d at 108 (quoting Webster's Third New International Dictionary 1936 (1993)). Similarly, this Court has noted that, in ancient societies, restitution was "a means by which the offender could buy back the peace he had broken," McCullough, 38 Va. App. at 815 n.2, 568 S.E.2d at 451 n.2 (internal quotation marks and citation omitted), and this Court has also held that it is reasonable to prevent a defendant "from profiting from the crime he committed," Waiters v. Commonwealth, 33 Va. App. 739, 743, 536 S.E.2d 923, 925 (2000).

Here, DMAS reimbursed appellant for what appellant *claimed* were personal care services. However, the trial court record establishes that personal care services can only be "rendered by a fully trained PCA." As the Commonwealth argued in the trial court, appellant

received $180,082 from DMAS *only* because he "deceived" DMAS into paying these funds. Otherwise, DMAS *never would have* authorized these payments to appellant totaling $180,082.

In light of these circumstances, the trial court ordered appellant to pay restitution in the amount of $180,082 to DMAS – the victim in this case. This decision was "within the sound discretion of the trial court," <u>Martin</u>, 274 Va. at 735, 652 S.E.2d at 111, and we find no basis to conclude that the trial court abused its discretion here.

### III. CONCLUSION

The trial court did not err when it determined that the "damages or loss caused by" appellant's offense totaled $180,082. Code §§ 19.2-303 and 19.2-305(B); <u>see also</u> Code § 19.2-305.1(A). Therefore, the trial court did not abuse its discretion when it ordered appellant to pay $180,082 to the Commonwealth of Virginia Department of Medical Assistance Services – the victim here – as restitution in this case. Accordingly, for the foregoing reasons, we affirm this order of restitution by the trial court.

<u>Affirmed.</u>