COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder and Petty
Argued at Richmond, Virginia

JODI LYNN BOLEY

                                    MEMORANDUM OPINION* BY
v.       Record No. 0033-12-2            JUDGE WILLIAM G. PETTY
                                         APRIL 16, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

John D. Mayoras (Spencer, Mayoras, Koch & Cornick, on brief), for
appellant.

Elizabeth C. Kiernan, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

Appellant, Jodi Lynn Boley, was convicted by a jury of five counts of embezzlement in

violation of Code § 18.2-111. Boley was sentenced to seven years in prison and ordered to pay

$1,405,000 in restitution to the victim, VTS Productions, Inc. On appeal, Boley argues that the

trial court abused its discretion in calculating the restitution amount. We reverse and remand for

further proceedings to calculate the appropriate amount of restitution.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite below only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal. "On appeal, 'we review the evidence in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

Boley contends that the trial court abused its discretion by ordering restitution based solely on figures listed in a victim impact statement, without evidence that the amount of loss alleged was actually caused by Boley's crimes. We agree.

We review a trial court's decisions on restitution and other sentencing matters under an abuse of discretion standard. See Burriesci v. Commonwealth, 59 Va. App. 50, 55, 717 S.E.2d 140, 143 (2011); Alger v. Commonwealth, 19 Va. App. 252, 257, 450 S.E.2d 765, 768 (1994). "On appeal, where the restitutionary amount is supported by a preponderance of the evidence and is 'reasonable in relation to the nature of the offense,' the determination of the trial court will not be reversed." Burriesci, 59 Va. App. at 55-56, 717 S.E.2d at 143 (quoting McCullough v. Commonwealth, 38 Va. App. 811, 817, 568 S.E.2d 449, 451-52 (2002)). An abuse of discretion occurs "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when . . . the court, in weighting those factors, commits a clear error of judgment." Turner v. Commonwealth, 284 Va. 198, 206, 726 S.E.2d 325, 329 (2012) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011)). Although it is within the trial court's discretion, the scope of restitution is limited "to payments for 'damages or losses caused by the offense.'" Howell v. Commonwealth, 274 Va. 737, 740, 652 S.E.2d 107, 108 (2007) (citing Code §§ 19.2-303, -305(B)). Those "[c]osts that result only indirectly from the offense, that are a step removed from the defendant's conduct, are too remote and are inappropriate for a restitution payment." Id. at 741, 652 S.E.2d at 109.

The Commonwealth's argument relies on this Court's holding in Alger that "the legislature intended that the victim impact statement be used by the trial judge to determine the amount of restitution." 19 Va. App. at 259, 450 S.E.2d at 769. However, Alger does not hold that these statements are conclusive proof of the appropriate restitution amount. Nor does it relieve the trial judge from determining whether, by a preponderance of the evidence, the damages or loss claimed were in fact caused by the offense for which Boley was convicted. The dispute in Alger involved the use of insurance payout figures in a victim impact statement to determine the value of specific items taken in the robbery for which the defendant was convicted. Thus, there was an obvious causal connection between the defendant's crime and the losses listed in the victim impact statement. Furthermore, the figures were accompanied by testimony from the probation officer who prepared the report that "he had personally contacted each insurance company or its agents and obtained the actual value of the property stolen, recovered, claimed on insurance, and reimbursed through insurance coverage." Id. at 258, 450 S.E.2d at 768.

After this case was argued we decided Sigler v. Commonwealth, ___ Va. App. ___, ___ S.E.2d ___ (Apr. 2, 2013), involving the issue of the appropriate amount of restitution for items taken in a theft. In that case, however, it was undisputed that the value of the property stolen was a legitimate basis for an award of restitution. The dispute was over quantum of proof necessary to establish the value of the property taken, not whether the victim's loss was caused by the theft. The victim who prepared the figures testified at sentencing, stating she had prepared a list of each missing item and estimated its value and that she had provided this same list to her insurance company—subjecting her to the risk of nonpayment on her claim or prosecution for insurance fraud if the amounts were false or inflated. Id.; see also Burriesci, 59 Va. App. at 54, 717 S.E.2d at 142 (upholding a restitution award where the trial court was "presented a 12-page

exhibit indicating that appellant had received [improper] reimbursements from [Virginia's Medicaid administrator] totaling $180,082").

Unlike Alger and Sigler, here there is no evidence from which the trial court could determine whether the claimed damages were caused by Boley's embezzlement.[1] A significant portion of the restitution award consists of tax liabilities incurred by the victim corporation during the time of Boley's embezzlement scheme. It is not clear from this record if this amount reflects only fines and penalties for late payment, which would be appropriate for a restitution award, or whether it includes the company's original unpaid tax liability, which arose independently of Boley's embezzlement. To the extent that Boley embezzled funds that were intended to pay the corporation's payroll tax liability, it is appropriate that she be ordered to return those funds, and to take responsibility for any penalties and interest that accrued because of her deception regarding whether the taxes were paid.[2]

Nevertheless, the company's original obligation to remit payroll taxes to the Internal Revenue Service was not "caused by" Boley's embezzlement; it arose as a result of the operation of the Internal Revenue Code. See Howell, 274 Va. at 741, 652 S.E.2d at 109 ("[T]he installation of a security system, while related to Howell's burglary, was not caused by the offense as required by Code §§ 19.2-303, -305(B), -305.1(A)."). Boley was already ordered to return the money she diverted from tax payments into her personal accounts, which the

---

[1] The trial court based the restitution award of $1,405,000 on a victim impact statement prepared by Chris Chandler, appellant's brother and president of VTS Productions. Chandler itemized the damages suffered due to appellant's embezzlement as follows: an "estimated $750,000" owed to the "IRS & State of Virginia;" an "estimated $350,000" in "VTS Theft;" $250,000 in a "Trust Fund Penalty;" and $55,000 in legal and accounting fees. The total amount of loss according to Chandler was $1,405,000. Chandler provided no supporting documentation that detailed how he arrived at these figures.

[2] The victim impact statement also includes an amount the victim paid for attorneys and accountants to unravel Boley's embezzlement scheme. To the extent these payments were made to uncover the extent of the crime, they would be considered a loss caused by Boley's embezzlement.

corporation could then remit to the IRS to cover its tax liabilities.  To require Boley to return the embezzled money *and* assume liability for the company's unpaid payroll taxes would constitute a double payment.

There is also a large discrepancy between the amount of money that was proven to be embezzled at trial—approximately $156,000—and the amount attributed to "theft" on the victim impact statement—$350,000.  We recognize that the standard of proof is different at sentencing, and a restitution award is not restricted to the amount proven at trial.  See McCullough, 38 Va. App. at 817, 568 S.E.2d at 451 ("[F]ailure to prove the entire amount of loss caused by the offense during the guilt phase . . . did not preclude the imposition of a greater amount upon proper proof during the sentencing phase.").  Without any evidence of how this additional amount was calculated, or how it relates to Boley's crimes, there is no basis for the trial court to make such an award.

Because there was no evidence to show how the amounts on the victim impact statement were derived, or how the losses were caused by Boley's embezzlement, we hold that the trial court abused its discretion in ordering the amount of restitution.

III.

For the foregoing reasons, we reverse and remand for further proceedings to determine the appropriate restitution award consistent with this opinion.

Reversed and remanded.