COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Raphael
Argued at Lexington, Virginia

KENNY JAMES SLUSSER

                                                    OPINION BY
v.        Record No. 0772-21-3              JUDGE STUART A. RAPHAEL
                                                        MAY 10, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
K. Mike Fleenor, Jr., Judge

Devon J. Munro (Beverly M. Davis; Munro Law P.C.; Davis, Davis
& Davis Attorneys, on briefs), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Kenny James Slusser appeals a criminal-restitution order that directed him to

pay $41,634.60 to the victim, Jonathan Hetherington, whose rental house was destroyed by fire.

Because the record does not support that award, we vacate the restitution order and remand this

case for a new restitution determination.

I.  BACKGROUND[1]

In April 2020, Slusser set fire to the house he was renting from Hetherington.

Photographs of the damage were introduced into evidence, showing that the house was "burned

completely down." The record does not tell us how the fire started.

---

[1] We recite the evidence in the light most favorable to the Commonwealth because it was
the prevailing party below. *E.g.*, *Shelton v. Commonwealth*, 66 Va. App. 1, 3 (2016).

Slusser was indicted for arson of an unoccupied building belonging to Hetherington. Under Code § 18.2-77(B), arson is a Class 4 felony. Slusser entered an *Alford* [2] plea of guilty to destruction of property under Code § 18.2-137(B)(ii), a Class 6 felony. The Commonwealth and Slusser stipulated that Slusser would receive a sentence of five years in prison (with five years suspended) and fifty hours of community service. Slusser also agreed to "pay restitution, which amount shall be determined at a later date." The trial court accepted the plea agreement and scheduled the case for "restitution review."

At the restitution hearing, the Commonwealth called Hetherington to testify about the value of the house. The Montgomery County real-estate-tax assessment for 2019 showed a total assessed value of $89,500, with $26,900 for the 3.2-acre parcel of land and $62,600 for the "building and improvements value." The Commonwealth also introduced a letter to Hetherington from "State Farm" insurance. [3] The letter described two different insurance benefits: an "estimate of repair as well as payment . . . representing the actual cash value of repairs" in the amount of $121,652.66; and "Replacement Cost Benefits" of "the actual cost of repairs, or $94,503.60, whichever is less." The cryptic description of benefits—at the heart of this appeal—reads as follows:

> Please find enclosed our estimate of repair as well as payment in the amount of $121,652.66, representing the actual cash value of repairs. This represents payment under Section I—Dwelling Coverage of your policy.
>
> Please have the contractor of your choice review the estimate. Should you or your contractor have any questions concerning the estimate, please call us before any work is started.

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970). "When offering an *Alford* plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense." *Ramsey v. Commonwealth*, 65 Va. App. 593, 596 n.1 (2015).

[3] The record does not disclose the insurance company's full corporate name.

> To make a claim for the Replacement Cost Benefits of your policy, simply return the enclosed Explanation of Building Replacement Cost Benefits form to us, along with the bills for repairs. A payment will then be issued to you for the actual cost of repairs, or $94,503.60, whichever is less. At our option, an inspection of these repairs will be made.

Although the letter mentions the insurance policy, the Commonwealth did not introduce the policy itself into evidence.

Hetherington testified that State Farm paid him $121,652.66 for the first benefit. He said that the payment was for the loss of the house alone, not land value. Hetherington also testified that he did not apply for the second item—"Replacement Cost Benefits"—because he decided to sell the property without rebuilding the house. Selling the property netted him $55,000.

Even though Hetherington elected not to rebuild, he believed he was entitled to both benefits described in the State Farm letter. He described the second, "Replacement Cost Benefit[]" as the value "for the complete restoration of my home" and "the value to reconstruct." He also sought to recover the insurance deductible that he paid to State Farm: $2,131. Hetherington said he was not seeking any compensation for the land value of the 3.2-acre parcel.

The defense called Slusser's sister as a witness. She testified that Slusser had lived in the house since 2011 and that she had photographed it in 2018. The photographs were received into evidence, showing a run-down house with debris strewn about the yard. She took the pictures to show her siblings "how bad it looks [so] maybe they [could] help me clean it up some." She said that the house had no insulation and no heating or central air-conditioning. Slusser had to use his wood stove not only to cook but also to heat the premises.

Slusser's counsel offered no other evidence in defense. He did not argue that Slusser could not afford to pay the amount of restitution sought by the Commonwealth.

In their closing arguments, the Commonwealth and Slusser agreed that Hetherington had been paid the $121,652.66 and was not entitled to restitution for that amount. They also agreed that Hetherington was entitled to recover his deductible cost of $2,131. They disagreed, however, about whether the $94,503.60 Replacement Cost Benefits constituted damages to Hetherington that should be included in the restitution award. Slusser's counsel argued against including it, saying it was "replacement value cost," not "the fair market value of the building that was lost."

The trial court agreed with the Commonwealth that Hetherington was entitled to both State Farm benefits. The court said that the two sums, taken together, "in effect established the value of that property." The court did not explain, however, what it understood to be covered by either benefit. The court added the deductible amount ($2,131) to Hetherington's loss. But it deducted from the restitution obligation the $121,652.66 that Hetherington had already received from State Farm and the $55,000 that Hetherington received from selling the property. Summing those amounts, the court calculated a restitution figure of $41,634.60 to be paid to Hetherington. Here is the trial court's calculation, in table form:

| Description | Restitution Valuation |
|---|---|
| First State Farm benefit | $121,652.66 |
| Second State Farm benefit | $94,503.60 |
| Deductible paid by Hetherington | $2,131.00 |
| State Farm payment to Hetherington | -($121,652.66) |
| Proceeds from property sale | -($55,000.00) |
| **TOTAL** | **$41,634.60** |

On appeal, Slusser argues that the trial court abused its discretion by combining the two insurance benefits. He reasons that Hetherington received ample compensation from the $121,652.66 State Farm payment, that the second benefit was for replacement value, not fair market value, and that the restitution amount should be only $2,131, Hetherington's

- 4 -

out-of-pocket cost for the deductible. The Commonwealth, by contrast, defends the full amount of the award, arguing that the trial court did not abuse its discretion.

## II. ANALYSIS

### A. Virginia's sentencing laws confer broad discretion on the trial judge to impose restitution as a condition of a suspended sentence.

"A trial court has 'wide latitude' to make sentencing decisions such as the ordering of restitution, because '[t]he determination of sentencing lies within the sound discretion of the trial court.'" *Sigler v. Commonwealth*, 61 Va. App. 674, 678 (2013) (first quoting *Deal v. Commonwealth*, 15 Va. App. 157, 160 (1992); then quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). Code § 19.2-303 provides that, "[a]fter conviction, . . . the court may . . . suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." Such conditions often include restitution. When the Commonwealth seeks restitution, it must prove "the 'damages' or loss incurred by an aggrieved party as a result of the offense" by "a preponderance of the evidence." *McCullough v. Commonwealth*, 38 Va. App. 811, 816 (2002); *Bazemore v. Commonwealth*, 25 Va. App. 466, 468-69 (1997).

Restitution may "help make the victim of a crime whole." *McCullough*, 38 Va. App. at 815. Upon the victim's request, for instance, the restitution order must be docketed as a civil judgment in the victim's favor, and the victim's enforcement of that civil judgment is not subject to any statute of limitations. Code § 19.2-305.2(B).

But restitution may also serve "other purposes of sentencing, including deterrence, rehabilitation and retribution." *McCullough*, 38 Va. App. at 815 n.1 (citing Note, *Victim Restitution in the Criminal Process: A Procedural Analysis*, 97 Harv. L. Rev. 931, 937-41

(1984)).  In other words, criminal restitution "serves purposes that differ from (though they overlap with) the purposes of tort law."  *Paroline v. United States*, 572 U.S. 434, 453 (2014).

The rehabilitative purpose of criminal restitution, in particular, is reflected in the fact that the trial court may require, as a condition of a suspended sentence, that the defendant make "*at least partial restitution* or reparation to the aggrieved party or parties for damages or loss caused by the offense."  *McCullough*, 38 Va. App. at 814 (emphasis added) (quoting Code § 19.2-305(B)).  That at-least-partial-restitution requirement appears multiple times in the Code.  *See also* Code §§ 19.2-303, 19.2-305.1(A), (B).  The Code mandates that only certain crimes require restitution of "the *full amount* of damages"—crimes involving damaging or destroying the Capitol or other State property in Capitol Square or assigned to the Capitol Police.  Code § 19.2-305.1(B2) (emphasis added).

In awarding less-than-full restitution, the trial court may properly consider "the defendant's ability to pay."  *Ohree v. Commonwealth*, 26 Va. App. 299, 311 (1998).  The court may require the defendant to submit a restitution plan that "appears to be feasible to the court under the circumstances."  Code § 19.2-305.1(A), (B); *see also* Code § 19.2-305.1(C) ("reasonable and practical under the circumstances").  It may permit "deferred payments or installments."  Code § 19.2-354(A).  It may order the defendant to "make restitution during his confinement," but only "if feasible, based upon both his earning capacity and net worth as determined by the court at sentencing."  Code § 19.2-305.1(C).  Once a payment plan is established, defendants whose "financial condition has prevented or will prevent [them] from complying . . . may petition the trial court for a modification" of the plan.  *Ohree*, 26 Va. App. at 310.  Defendants who fail to pay restitution in accordance with an approved plan may have their probation or suspended sentences revoked, but only for an "[u]nreasonable failure."  Code § 19.2-305.1(G).  For instance, when "the evidence establishes that the failure resulted solely

- 6 -

from an inability to pay and not a willful refusal, it is an abuse of discretion to automatically revoke the prior suspended sentence without considering reasonable alternatives to imprisonment." *Duff v. Commonwealth*, 16 Va. App. 293, 298-99 (1993).

How a State chooses to structure its criminal-restitution system is quintessentially a legislative judgment. *See generally Measure and Elements of Restitution to Which Victim Is Entitled Under State Criminal Statute*, 15 A.L.R. 5th 391, 432 (1993) ("It is generally recognized that courts of criminal jurisdiction lack the power to direct reparation or restitution to a crime victim in the absence of a statutory provision to such effect."). Several States require at-least-partial restitution as a condition of a suspended sentence.[4] Some specify that the defendant's ability to pay must be considered when setting the restitution amount.[5]

---

[4] *See, e.g.*, Del. Code Ann. tit. 11, § 4347(j)(3) ("partial restitution"); Haw. Rev. Stat. § 801D-4(d) (same); N.C. Gen. Stat. § 15A-1340.36(a) (same); *see also* Nev. Rev. Stat. § 176A.430(1) ("full or partial restitution . . . unless . . . impracticable"); W. Va. Code § 61-11A-4(g) (restitution "shall be a condition of the probation or parole unless the court or Parole Board finds restitution to be wholly or partially impractical"); Wis. Stat. § 973.20(1r) ("full or partial restitution . . . unless the court finds substantial reason not to do so").

[5] *See, e.g.*, Ga. Code Ann. § 17-14-10(a) (requiring consideration of, among other things, the offender's "financial resources and other assets," "earnings and other income," "financial obligations," and "amount of damages"); N.C. Gen. Stat. § 15A-1340.36(a) (requiring consideration of "the resources of the defendant including all real and personal property owned by the defendant and the income derived from the property, the defendant's ability to earn, the defendant's obligation to support dependents"); S.C. Code Ann. § 17-25-322(B) ("the court may take into consideration . . . the financial resources of the defendant and the victim and the burden that the manner or method of restitution will impose upon the victim or the defendant"); Wis. Stat. § 973.20(13)(a) (requiring consideration of the "financial resources of the defendant," the "present and future earning ability of the defendant," and the "needs and earning ability of the defendant's dependents"); *see also* 18 U.S.C. 3663(a)(1)(B)(i)(II) (allowing consideration of "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents" when determining restitution for certain specified offenses).

By contrast, several jurisdictions mandate full compensation for the loss suffered by the victim.[6] Some make the defendant's ability to pay entirely irrelevant.[7]

Compared to those systems, Virginia's sentencing laws generally give the sentencing judge broader discretion when determining restitution. Because suspended sentences based on conditions like restitution provide "alternatives to incarceration," Virginia's sentencing statutes are considered "highly remedial and should be liberally construed to provide trial courts valuable tools for rehabilitation of criminals." *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004). The determination of the appropriate amount of restitution calls for the exercise of "sound judicial discretion." *Ohree*, 26 Va. App. at 311. That means "sound discretion guided by law." *Comm'r of Hwys. v. Karverly, Inc.*, 295 Va. 380, 388 n.7 (2018) (quoting Herbert Broom, *Commentaries on the Common Law* 22 (4th ed. 1869)). "[I]t is not an arbitrary but a judicial discretion, to be exercised in reference to established principles of law relating to the subject, and upon an

---

[6] *See e.g.*, Ariz. Rev. Stat. Ann. §§ 13-603(C) (requiring restitution of the "full amount of the economic loss"), 13-804(E) ("full restitution"); Cal. Penal Code § 1202.4(f) ("full restitution"); Colo. Rev. Stat. § 18-1.3-205 (same); Haw. Rev. Stat. § 706-646(3) ("sufficient to reimburse any victim fully for losses"); Kan. Stat. Ann. § 19-4809(c)(1) (same): Ky. Rev. Stat. Ann. § 421.500(11) (same); Mich. Comp. Laws § 780.766(2) (same); Mont. Code Ann. § 46-18-201(5) (same); Okla. Stat. Ann. tit. 22, § 991f (C)(2) (same); *see also* 18 U.S.C. § 3664(f)(1)(A) ("full amount of each victim's losses"); Minn. Stat. § 611A.04(1)(c) (permitting sentence of "partial restitution" but providing that "the full amount of restitution . . . may be docketed as a civil judgment").

[7] *E.g.*, 18 U.S.C. § 3664(f) (requiring that restitution be calculated "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant," but that court consider defendant's financial condition when determining payment schedule); Haw. Rev. Stat. § 706-646(3) (excluding consideration of defendant's ability to pay when "determining the amount of restitution" but mandating it when "establishing the time and manner of payment"); Okla. Stat. Ann. tit. 22, § 991f(C)(2)(b) ("the amount of restitution shall be established regardless of the financial resources of the offender"); 18 Pa. Cons. Stat. § 1106(c)(1) ("The court shall order full restitution: (i) Regardless of the current financial resources of the defendant . . . .").

equitable view of all the circumstances of the particular case." *Harris v. Harris*, 72 Va. (31 Gratt.) 13, 16-17 (1878) (quoting *Bailey v. Bailey*, 62 Va. (21 Gratt.) 43, 57 (1871)).

B. *Because of the discretionary nature of the decision, the standard of review is for abuse of discretion.*

We review a trial court's restitution determination for abuse of discretion. *Fleisher v. Commonwealth*, 69 Va. App. 685, 689 (2019). "It is immaterial that other judges 'might have reached a different conclusion than the one under review.'" *Id.* (quoting *Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "When imposing sentence, the court 'has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Id.* at 691 (alteration in original) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). A court abuses its discretion

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). A trial court, "by definition," also "abuses its discretion when it makes an error of law." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)); *Murray v. Commonwealth*, 71 Va. App. 449, 456 (2020) (same).

C. *The trial court abused its discretion in determining the restitution award.*

In his opening brief, Slusser "agrees that he should reimburse Hetherington" for the $2,131 deductible that Hetherington paid to obtain his insurance recovery. But Slusser sees that as the limit of his restitution obligation, arguing that anything more would give Hetherington a "windfall for a barely inhabitable, ramshackle building."

We have no doubt that the trial court did its best to arrive at a fair restitution award in this case. But we find several defects in the trial court's determination that persuade us that the award here amounts to an abuse of discretion.

The Commonwealth argues that the two State Farm insurance benefits, taken together, establish Hetherington's actual loss from the fire. The Commonwealth relies on *Alger v. Commonwealth*, 19 Va. App. 252 (1994), for the proposition that "payment by an insurance company" may be a "reliable indicator of true loss" and that "proof of the amount paid by one in an arms-length transaction is considered prima facie evidence of the reasonableness of the payment." 19 Va. App. at 258 (finding no abuse of discretion in trial court's "accepting the amounts paid by the insurance company and the deductible as proper for purposes of restitution").

But in this case, the replacement-cost benefit was never "paid." And the possibility that it might have been paid does not explain *what* that benefit would have paid for.

In fact, the record does not explain the scope of *either* of the two State Farm benefits, let alone show how those benefits relate to each other or to Hetherington's actual loss. According to State Farm's letter, the first benefit was for $121,652.66, "representing the actual cash value of repairs." Repairs to do what? The record does not say. The second benefit is labeled "Replacement Cost Benefits." Had Hetherington elected to rebuild, he would have been entitled to another insurance payment amounting to the lesser of "the actual cost of repairs" or $94,503.60. The record is silent about what "repairs" would have been covered under the second benefit but not the first. The record does not disclose, for instance, how the repairs paid under the second benefit would bring about the "[r]eplacement" of the house if the first benefit already covered "the actual cash value of repairs."

The Commonwealth fared no better at explaining the two benefits at oral argument. The Commonwealth theorized that, "presumably," the two benefits were "for two different types of repairs." But it could only speculate about what those repairs might entail. The Commonwealth relied on Hetherington's testimony that the first benefit "reimbursed [him] for the *structure* of the home," while the second would have paid for "*construction* for the home." (Emphasis added). We do not find that distinction illuminating. One cannot repair the "structure" of a house without "construction"; nor can one engage in house "construction" without building a "structure." The distinction is meaningless.

The second benefit would have covered the construction of a brand-new house, but the record does not say what kind of house. Would it have been a house comparable to what Slusser rented—a dilapidated abode without insulation, heating, or air-conditioning? Or a house in a more desirable condition? Nothing in the record answers Slusser's argument that the replacement-cost benefit could well have included upgrades—things like "new appliances" and "upgraded fixtures"—that would have made it "an entirely new and different house" worth more than the value of what was lost. *Cf. Fleisher*, 69 Va. App. at 691 (concluding that the cost of installing new lock-and-key systems in cars that the defendant broke into were compensable because they were *not* upgrades).

Without differentiating what the two insurance benefits covered, the trial court could not have determined that it had to combine them to measure "the value of the property" lost by Hetherington. Code § 19.2-305.2(A).[8] This flaw requires that we vacate the restitution award

_____

[8] Code § 19.2-305.2(A) provides that the court, "when ordering restitution . . . , may require that such defendant, in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense, (i) return the property to the owner or (ii) if return of the property is impractical or impossible, pay an amount equal to the greater of the value of the property at the time of the offense or the value of the property at the time of sentencing." We have noted in an unpublished opinion that this section does not require proof of the fair market

- 11 -

because "a relevant factor that should have been given significant weight [was] not considered." *Landrum*, 282 Va. at 352 (quoting *Kern*, 738 F.2d at 970).

We also do not comprehend the legal or factual basis for subtracting from the house value the $55,000 that Hetherington received from selling the property. Hetherington testified that State Farm's valuation was "only looking at the building and not the land." Maybe a victim in a different case might claim restitution for the loss of land value. Perhaps the ruins might reduce the property value because they require clean-up and remediation. Or perhaps they are simply an eyesore that depresses real-estate value. But Hetherington disclaimed any such theory. He said he was not "seeking additional sums for the land value."

Thus, the restitution computation for the value of the house should not have been reduced by the value that Hetherington received from selling the land. By conflating the value of the land and the value of the improvements, the trial court appears to have "considered and given significant weight" to "an irrelevant or improper factor." *Landrum*, 282 Va. at 352.

### D. Scope of issues on remand

At oral argument, Slusser and the Commonwealth agreed that, if we find the record insufficient to determine the scope and coverage of the two State Farm benefits, we should remand the case for further proceedings. Having so found, we agree that a remand is appropriate.

Although the trial court may take additional evidence at a new restitution hearing, our remand is limited to determining what the two insurance benefits represent so that the trial court may determine the "value of the property" lost by Hetherington. Code § 19.2-305.2(A). The

---

value of the property, but simply "the value of the property" at the time of the offense or at sentencing. *Baugh v. Commonwealth*, No. 0347-18-2, slip op. at 4-5, 2019 WL 6704346, at *2 (Va. Ct. App. Dec. 10, 2019).

remand is not intended to give either party a "second bite at the apple." *Cotton Creek Circles, LLC v. San Luis Valley Water Co.*, 279 Va. 320, 325 (2010) (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994)). This is not an opportunity "to take a mulligan." *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 282 (2015) (Scalia, J., dissenting).

In other words, the remand does not open up the restitution hearing for new and different arguments to be raised that could have been raised before. This limitation comports with the law-of-the-case doctrine:

> Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

*Cromartie v. Billings*, 298 Va. 284, 306 (2020) (quoting *Kondaurov v. Kerdasha*, 271 Va. 646, 658 (2006)). The law-of-the-case doctrine "applies both to issues that were actually decided by the court, and also to issues 'necessarily involved in the first appeal, whether actually adjudicated or not.'" *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008) (quoting *Kemp v. Miller*, 160 Va. 280, 285 (1933)).

We emphasize the limited scope of this remand because several issues were raised in the briefing and at oral argument here that were not addressed by the trial court and to which no party assigned error. When a party might be tempted to raise foreclosed issues on remand, it is appropriate for an appellate court to identify them so that the scope of the remand is clear. *E.g.*, *Cal. Condo. Ass'n v. Peterson*, ___ Va. ___, ___ n.3 (Mar. 17, 2022) (noting that the Court's refusal of several assignments of error prevented the issues underlying them from being "relitigated on remand").

First, the Commonwealth's brief noted the possible application of the collateral-source rule,[9] a rule that the Supreme Court of Virginia has applied in tort cases since 1877[10] and that it extended to contract cases in 2019.[11] Other jurisdictions are divided on whether the collateral-source rule extends to criminal restitution.[12] At oral argument, the Commonwealth

---

[9] Under the collateral-source rule, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." *Schickling v. Aspinall*, 235 Va. 472, 474 (1988); *see also* Restatement (Second) of Torts § 920A(2) (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). "Insurance proceeds are the most common collateral source." *Collateral-Source Rule*, *Black's Law Dictionary* (11th ed. 2019). On the other hand, "[a] payment made by the tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability." Restatement (Second) of Torts, *supra*, § 920A(1). Such payments are considered to be from (or on behalf of) the defendant, not from a "collateral" source. *E.g.*, *Dominion Res., Inc. v. Alstom Power, Inc.*, 297 Va. 262, 269 (2019) (holding that the collateral-source rule "does not apply to settlement proceeds from one of multiple joint tortfeasors because the settlement implicitly attributes part of the fault to that individual; as such, the settlement amount is deducted from the amount the remaining tortfeasors owe").

[10] *See Balt. & Ohio R.R. Co. v. Wightman*, 70 Va. (29 Gratt.) 431, 446 (1877) (holding that the trial judge in a wrongful-death case correctly excluded evidence that the victim's family received compensation from the victim's life-insurance policy), *rev'd on other grounds sub nom. Balt. & Ohio R.R. Co. v. Koontz*, 104 U.S. 5 (1881).

[11] *Dominion*, 297 Va. at 273-74 (holding that the collateral-source rule "can apply to breach-of-contract cases" but that, depending on the circumstances, "[d]ifferent contract cases may demand different answers" (quoting 3 Dan B. Dobbs, *Law of Remedies* § 12.6(4), at 157 (2d ed. 1993))).

[12] For jurisdictions applying the collateral-source rule to criminal restitution, declining to reduce the defendant's restitution obligation by the amount paid to the victim from collateral sources, *see, e.g.*, 18 U.S.C. § 3664(f)(1)(B); *Roberts v. State*, 863 So. 2d 1149, 1154 n.2 (Ala. Crim. App. 2002); *Dorris v. State*, 656 P.2d 578, 583-84 (Alaska Ct. App. 1982); *People v. Birkett*, 980 P.2d 912, 925 (Cal. 1999); *M.E.I. v. State*, 525 So. 2d 467, 468 (Fla. Dist. Ct. App. 1988); *People v. Wilson*, 408 N.E.2d 1209, 1213 (Ill. App. Ct. 1980); *Baker v. State*, 70 N.E.3d 388, 391 (Ind. Ct. App. 2017); *Martinez v. State*, 974 P.2d 133, 135 & n.5 (Nev. 1999); Okla. Stat. Ann. tit. 22, § 991f (C)(2); 18 Pa. Cons. Stat. § 1106(c)(1)(i); *Commonwealth v. Kerr*, 444 A.2d 758, 760-61 (Pa. Super. Ct. 1982); and *Williams v. State*, 949 P.2d 878, 879-80 (Wyo. 1997).

said that it did not object to giving Slusser full credit for the insurance moneys Hetherington received from State Farm, but the Commonwealth cautioned that such credits might not be appropriate in another restitution case. Because the Commonwealth did not ask the trial court to apply the collateral-source rule, however, we need not decide whether Virginia law permits that rule to be extended to criminal-restitution cases.

Second, the Commonwealth's brief cited the possibility that State Farm might have a "subrogation" claim against Slusser for the insurance benefits it paid Hetherington.[13] It added the possibility that Hetherington might have to reimburse State Farm for moneys he received as restitution from Slusser. The Commonwealth acknowledged that the record here does not address those questions. Because neither party claims on appeal that it was error for the trial court *not* to account for those concerns, the law-of-the-case doctrine also precludes their consideration on remand.

---

For jurisdictions requiring that the defendant's restitution obligation be reduced by the amount of compensation paid to the victim from collateral sources, *see, e.g.*, *Town of Gilbert Prosecutor's Office v. Downie*, 189 P.3d 393, 396 (Ariz. 2008) (*en banc*); Me. Stat. tit. 17-a, § 2005(2)(C); Mich. Comp. Laws § 780.766(9); *People v. Washpun*, 438 N.W.2d 305, 307-08 (Mich. Ct. App. 1989); N.H. Rev. Stat. Ann. § 651:63(I); *State v. Burr*, 782 A.2d 914, 915 (N.H. 2001); *State v. Jacobs*, 106 N.E.3d 897, 900-01 (Ohio Ct. App. 2018); Tex. Code Crim. Proc. Ann. art. 42.037(f)(1); and W. Va. Code § 61-11A-4(e).

[13] As it applies in the insurance context, "subrogation" is the principle that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Subrogation*, *Black's Law Dictionary* (11th ed. 2019). Virginia law generally permits an insurance company to include a provision in the policy that allows the insurer to step into the insured's shoes to pursue third parties who caused the loss that the insurer has paid, on the one hand, or that requires the insured to reimburse the insurer when the insured receives compensation from the tortfeasor, on the other. *See* Code § 38.2-207. There are two exceptions. Virginia prohibits subrogation when an insurer pays hospital and medical benefits under a policy covering personal injuries caused by third persons, Code § 38.2-3405; and also when an insurer pays benefits for bodily-injury and property-damage claims under a motor-vehicle-liability insurance policy, Code § 38.2-2209. *See* Code § 38.2-207 (excepting insurance contracts "subject to § 38.2-3405 or § 38.2-2209").

Third, the Commonwealth noted on brief that even when a victim's insurer cannot or does not seek subrogation against the tortfeasor for moneys paid to the insured, the insurer itself may still qualify for reimbursement in a criminal-restitution order. *See Alger*, 19 Va. App. at 256-57.[14] But the restitution order here identified Hetherington alone as the "victim" to whom restitution is owed. The law-of-the-case doctrine thus precludes the Commonwealth on remand from claiming that State Farm is an additional party entitled to restitution.

Finally, the Commonwealth acknowledged at oral argument that a defendant's inability to pay can be a proper consideration when determining restitution, *e.g.*, *Ohree*, 26 Va. App. at 311, but it correctly pointed out that Slusser did not raise that issue at the restitution hearing. Some States impose an affirmative duty on the sentencing judge to consider the defendant's ability to pay when determining restitution, even if the defendant fails to mention it.[15] But Virginia's sentencing laws do not. Accordingly, Slusser may not raise that argument for the first time on remand, absent a material change in his financial circumstances.[16]

---

[14] In *Alger,* following the lead of other jurisdictions, we held that restitution may be awarded to "both the insurance company of the party from whom property was stolen and the insured whose property was stolen or damaged." 19 Va. App. at 256-57; *see, e.g.*, *Arrington v. Commonwealth*, No. 0124-21-3, slip op. at 3, 2022 WL 1086085, at *2 (Va. Ct. App. Apr. 12, 2022) (affirming restitution award to two insurance companies that paid the victim's property-damage claims).

[15] *E.g.*, Wis. Stat. § 800.093(8)(a) (requiring court to consider, among other things, the defendant's "financial resources" and "present and future earning ability," and also the "needs and earning ability of the defendant's dependents"); Ga. Code Ann. § 17-14-10(a); N.C. Gen. Stat. § 15A-1340.36(a); W. Va. Code § 61-11A-4(a).

[16] *See West v. West*, 59 Va. App. 225, 234-35 (2011) ("[T]he 'law of the case' doctrine does not apply to a change in circumstances occurring after the judgment appealed. 'Where material facts have changed between the first appeal and the second, the law of the case doctrine is inapplicable.'" (quoting *Rowe v. Rowe*, 33 Va. App. 250, 266 (2000))). Similarly, Slusser's earlier failure to claim an inability to pay would not bar him from (1) seeking a future "modification" of his restitution obligation, *see Ohree*, 26 Va. App. at 310-11, or (2) claiming an inability to pay in a future revocation proceeding, *see Duff*, 16 Va. App. at 298-99. *Accord Morgan v. State*, 491 So. 2d 326, 327 (Fla. Dist. Ct. App. 1986) (holding that, even though the

III. Conclusion

We vacate the restitution order and remand this case for a new hearing and restitution determination, consistent with this opinion.

*Reversed and remanded.*

---

defendant waived his inability-to-pay argument by failing to raise it at sentencing, it would "not preclude the defendant, in a subsequent enforcement proceeding instituted by reason of the defendant's failure to comply with the restitution requirements of his probation, from defending on the basis of his financial inability to pay").